## WALKER VALLEY OIL & GAS CO. v. PARKS & PALMER.

No. 17507. Opinion Filed Jan. 3, 1928.

(Syllabus.)

1. **Contracts—Statutory Methods of Modifying Written Contract—Estoppel of Party by Conduct to Demand Literal Compliance with Contract.**

Under our law (section 5081, C. O. S. 1921), a contract in writing can be altered or modified only by a contract in writing, or by a subsequent oral agreement fully executed. But this does not, under certain circumstances, prevent the full operation of the principle of equitable estoppel to preclude a party to a written contract from demanding a literal compliance therewith by one who, in good faith, has relied upon the conduct of the other party, and has been led thereby to change his position in such a manner that it would work a fraud or injury to refuse to give him the benefits of the original agreement, or so much thereof as in justice and in equity he would be entitled to under the general principles of the law of contracts.

2. **Same—Facts Supporting Estoppel.**

For facts sufficient to operate as an equitable estoppel against one of the parties asserting a noncompliance with the literal terms of a written contract, see opinion.

3. **Principal and Agent—Implied Authority of Agent—Estoppel of Principal.**

In addition to the express authority granted an agent, there exists certain authority implied from the existence of the express authority to do a particular act or thing, and this authority will be implied when it appears that the thing done or transaction made was necessary and essential in order to promote the duty or carry out the purpose expressly delegated to him. Furthermore, whenever a principal has placed his agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.

Commissioners' Opinion, Division No. 2.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by Parks & Palmer, a partnership composed of R. C. Parks and J. R. Palmer,

against the Walker Valley Oil & Gas Company, for recovery of balance due on a contract. Judgment for plaintiffs, and defendant brings error. Affirmed.

Sandlin & Winans and Bond & Bond, for plaintiff in error.

Womack, Brown & Cund, for defendant in error.

HALL, C. This was an action by Parks & Palmer, a partnership, against the Walker Valley Oil and Gas Company, a corporation, for the recovery of a balance claimed as due and owing it on a performed contract for drilling an oil and gas well, or rather, a dry hole. The amount claimed and for which judgment was rendered is the sum of $2,929.10. Plaintiff had already been paid under this contract the sum of $4,897.06. The defendant contends that plaintiff failed to perform the terms of the contract, and therefore deny any liability. They also ask judgment against plaintiff for the sum of $4,897.06, the sum which was paid plaintiff in this transaction, basing their cross-action on the theory that the payment was made through a misapprehension and a mistake of fact.

The essential facts in the case are as follows: Plaintiff and defendant entered into a written contract whereby plaintiff agreed to drill for defendant an oil and gas well to a depth of 2,500 feet, unless oil or gas was discovered in paying quantities at a lesser depth. This was to be done for a stipulated price, and it was expressly conditioned that in case the hole was not drilled to a depth of 2,500 feet, or to the alternative depth, the contract would not be complied with and there would be nothing due plaintiff thereunder. The material, casing, derrick, slush pit, etc., were all furnished by the defendant. The contract is exceedingly lengthy, and it is impracticable to set out even a synopsis of it in this opinion. However, the vital and pivotal points of the contract, for the purposes of this litigation, are the provisions pertaining to the appointment and designation of an agent of the defendant to perform certain duties, numerous and varied in their nature, for defendant, in connection with the drilling of this well. One of the provisions of the contract is that:

"The company shall have an agent on the premises under whose supervision all tests and observations shall be made, and the contractor agrees that no casing will be set in the well, and no show, indication or trace of oil or gas will be drilled through without the company shall have due notice and an opportunity to have present such special representative, as it may wish, to direct all set-

ting of casing and such tests as he may desire before further drilling is done."

Sandwiched in other paragraphs of the contract are provisions that the contractor is to sample all formations designated by the company, unless otherwise directed by the company's agent; do certain core drilling when directed by the company's representative, and the company's representative was to have authority, indirectly, to discharge or remove any objectionable employees of the contractor, and that payment was to be made when the hole shall have been completed in a satisfactory manner and in conformity with the directions of the company or its agent.

The contract, however, expressly provides that it shall not be modified or altered except in the manner in which it was executed in the first instance—meaning, of course, the formal contract in writing executed by plaintiff and the defendant company.

The agent thus designated was one H. E. Wilson, who was the president of the company. The well was drilled to a depth of 2,418 feet, and at that point the company's agent, Wilson, directed a test, and with his consent a test was made at this depth by running in a string of perforated pipe about 100 feet in length—this particular pipe being designated as a "liner." It appears from the evidence that both the plaintiff and the agent of defendant understood that there was a probability, or at least a possibility, that the liner might not be pulled or loosened from its anchorage, and if oil or gas was not discovered at this point, drilling to a considerable greater depth would be impracticable. Neither oil nor gas was found present where the liner was set in the well. Plaintiffs then had an interview with defendant's agent, together with two directors of the company, relative to the matter of attempting to pull the casing or drop a smaller drill through the liner and drill to the 2,500 foot depth. Eighty-two feet from the bottom of the liner would have carried the hole to the depth of 2,500 feet. It appears that it was not possible to drill beyond the liner to a greater depth than about 200 feet.

It clearly appears from the evidence of both plaintiff and defendant it was understood between these parties mentioned, that is, plaintiff and Wilson, the special agent of defendant, or whatever he might be called, and the two directors of the company, that in order to pull the liner it was necessary to use a steel friction block called a "bull dog spear," weighing about 150 pounds, which was designed to set inside a pipe, and with tension it would adhere to it, and then the "spear" could not be moved unless the

pipe moved with it; and that in case this pipe could not be pulled, the well could be drilled to no other depth, as it was impossible to drill through the block of steel. These parties mentioned. representing the defendant company in the capacity we have heretofore mentioned, directed the plaintiff to attempt to pull the pipe or liner as above designated. It appears that the reason for the decision of the defendant to extricate the pipe or liner was the fact that there were some dry holes at the depth of 2,500 feet in neighboring territory, and it was not then expected to find a producing well at that depth; but the company did expect, at a later date, to drill the well to a depth of 2.900 feet to a supposed producing sand: and, therefore, at that time, they did not consider it any particular advantage to drill within the liner to only the contractual depth of **2,500 feet.**

After the failure to extricate the liner, this agent. Wilson, authorized the purchase of material with which to plug the well. The secretary to the company paid the plaintiff the sum of $4;897 07 in the form of a cashier's check, which had been issued by the bank some time previous to the date of payment.

Numerous errors are complained of by the defendant, plaintiff in error, in this action, all dependent to a very large extent on one main proposition. Defendant contends that by virtue of the written contract and the express provisions thereof, the agent, Wilson, as a special agent only, had no authority, except as expressed in the contract, and that this agent, Wilson, and the two directors were without authority to authorize plaintiff to do the things which plaintiff alleges prevented it from complying with all the literal terms of the contract.

Defendant cites the statutes and numerous authorities from this court. declaring the principle of law that a written contract can be modified only by a written contract, or by a subsequent oral agreement fully executed.

While the question is not altogether free from debate, we think defendant's position in this connection is untenable for two reasons: First, the authority of the agent, Wilson, as a representative of the company in this enterprise, was a part of the written contract. Some of this authority is clearly expressed, some is somewhat vague, but taking the express authority together with the surrounding circumstances and the situation of the parties, it reasonably appears that this agent, Wilson, had the **implied authority** to direct the plaintiff to do the things concerning this subject-matter which ulti-

mately prevented a literal or technical compliance with all the terms of the contract, and therefore, defendant is estopped from claiming to have something done which in a legal sense it prevented. Second, independently of the rule of express and implied authority, considering the surrounding circumstances, in connection with the agency of Wilson, especially his vital interest in the affairs of the corporation, being its principal officer, and that he, together with the two directors, Brown and Jackson, who, in furtherance of the welfare of the corporation in seeking to extricate the liner, so that the well might be drilled to a much greater depth, authorized the plaintiff to attempt to remove the liner from the well, at the hazard of destroying the well or hole, resulting in rendering it impossible for plaintiff to comply, in fact, with all the terms of the contract, was sufficient to preclude the defendant from asserting against plaintiff a noncompliance with the literal terms of the contract.

This last or second ground is based on the principle of "apparent authority." The rule in this connection, which in numerous cases has been declared by the courts, is set forth in Ruling Case Law, vol. 21, p. 856, as follows:

"Indeed, whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it."

The pertinent rule declared by this court in the case of Consolidated Flour Mills Co. v. Muegge, 127 Okla. 295, 260 Pac. 745, in quoting from the Supreme Court of Georgia, (Pickens Co. v. Thomas, 152 Ga. 648, 111 S. E. 27), said:

"If a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter **within the scope of the business; and this rule applies peculiarly to corporations which act only through their officers and agents.**" (Emphasis ours.)

The agent, Wilson, having legal authority to perform the particular acts which he performed in this case, the applicable principle here is that of equitable estoppel, which is defined by Pomeroy in vol. 2, sec. 804, of his Equity Jurisprudence (4th Ed.) as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is ab-solutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This definition of "equitable estoppel" has been adopted and applied by nearly every court in this country.

There were errors committed in the trial of this cause, which errors, under various and distinct assignments, counsel for plaintiff in error urge in their brief. In one of the assignments defendant complains of error of the trial court in permitting the plaintiffs to attempt to prove their cause of action both by evidence of a compliance with the express terms of the contract, and also upon the basis of quantum meruit. Of course, the admission of the evidence on the theory of quantum meruit was manifest error; but in view of the conclusions which we have reached and herein expressed as to the controlling legal principles and their application to the undisputed facts in this case, the pivotal issue in the case, at all times, was one of law instead of an issue of fact; and, therefore, all errors within the province of the jury were harmless, because the errors were wholly ineffectual in either controlling or affecting the judgment.

For the reasons herein stated, the judgment is affirmed.

BENNETT, DIFFENDAFFER, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 594, §610; 10 R. C. L. p. 111; 2 R. C. L. Supp. p. 1077. (2) 21 C. J. p. 1252, §269. (3) 2 C. J. p. 570, §211; p. 577, §218; p. 578; §220; 21 R. C. L. p. 908; 4 R. C. L. Supp. p. 1438.