## BU–VI–BAR PETROLEUM CORPORATION
### v. KROW et al.
#### No. 383.

Circuit Court of Appeals, Tenth Circuit.
March 17, 1931.

Edward P. Marshall, of Tulsa, Okl. (Charles O'Connor and J. J. D. Cobb, both of Tulsa, Okl., on the brief), for appellant.

John H. Cantrell, of Tulsa, Okl. (A. J. Biddison, Harry Campbell, and Valjean Biddison, all of Tulsa, Okl., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

This is the second appeal of this case. 40 F.(2d) 488, 69 A. L. R. 1295. The first trial resulted in a verdict for the plaintiffs (appellees here) for $10,500. The evidence on the first trial disclosed that the defendant had repudiated its contract to drill an oil well because the conditions in the oil business had so changed that the expenditure involved no longer promised an attractive speculation. The defendant appealed, and presented many reasons why it believed there was no liability on its part. This court examined those reasons and rendered an opinion which held them to be without merit. The case was reversed on the sole ground that the trial court directed the jury to apply a measure of damage at variance with the rule laid down in Hoffer Oil Corporation v. Carpenter (C. C. A. 10) 34 F.(2d) 587, 589. Upon the second trial, the evidence was substantially the same except as to the damage, and the jury returned a verdict for $10,000.

The facts are so fully set out in the report of the first appeal, that a sketch will suffice as background for this opinion. The plaintiffs owned or had under contract some oil and gas acreage, and wanted a test well drilled. The defendant agreed in writing to drill it on acreage to be transferred to it by plaintiffs, the plaintiffs further agreeing to deliver to defendant dry hole contributions from the Pure Oil Company for $3,000, and from the Magnolia Petroleum Company for $2,500. After this agreement was signed, but on the same day, plaintiffs ascertained that the Magnolia Company would make no such contribution; plaintiffs so advised defendant and offered to make the contribution themselves—offered to put up a certified check for the amount—which was agreed to by defendant. Plaintiffs likewise advised defendant that the Pure Oil Company was willing to make the contribution but that its manager wanted to discuss the terms of the dry-hole letter with the manager of the defendant. This arrangement was likewise assented to by defendant. Thereupon and thereafter both parties proceeded on the assumption that a valid contract to drill this well existed, and the plaintiffs, at request of defendant, expended time and money in reliance thereon. Shortly before the time arrived when defendant should have started drilling, it repudiated its agreement because of unfavorable conditions in the oil industry.

Error is assigned because the trial court admitted oral testimony as to the events that transpired after the contract was signed, concerning the dry hole contributions. Counsel assert that the admission of this testimony violates the parol evidence rule, and cite the familiar cases stating that excellent rule. The argument indicates a confusion of thought, either as to the facts or the law. The oral testimony was not as to agreements made before, or contemporaneous with, the writing; the testimony proved a performance of a part of the written agreement and a waiver of strict performance as to the balance. The parol evidence rule therefore has no application. It is further claimed that the reception of such evidence is in violation of an Oklahoma statute which permits the alteration of a contract in writing by a contract in writing or an executed oral agreement. C. O. S. 1921, § 5081. We do not construe this statute as repealing all the common law as to waiver and estoppel. Nor does the Supreme Court of Oklahoma, for its reports are replete with cases applying such common law. This particular contention of counsel was answered in a recent case by the Supreme Court of Oklahoma, wherein it was held:

"Under our law (section 5081, C. O. S. 1921), a contract in writing can be altered or modified only by a contract in writing, or by a subsequent oral agreement fully executed. But this does not, under certain circumstances, prevent the full operation of the principle of equitable estoppel to preclude a party to a written contract from demanding a literal compliance therewith by one who, in good faith, has relied upon the conduct of the

other party, and has been led thereby to change his position in such a manner that it would work a fraud or injury to refuse to give him the benefits of the original agreement or so much thereof as in justice and in equity he would be entitled to under the general principles of the law of contracts." Walker Valley Oil & Gas Co. v. Parks, 128 Okl. 286, 262 P. 672.

This same contention of counsel, in a slightly different guise, was presented on the first appeal, fully considered, and unequivocally answered, when this court held:

"One party to a contract, who is entitled to demand performance of a condition precedent, may waive such performance by acts evidencing such intention, especially where the other party changes his position in reliance upon such waiver."

Complaint is made as to the damages. The trial court charged the jury that—

" * * * The measure of damages which the plaintiffs would be entitled to recover is such sum as a reasonable person owning a lease upon 320 acres of land situated as were the leases which the plaintiffs owned would ordinarily pay or contribute to the cost of the drilling of a similar well for the benefits which would be reasonably expected to come to him from the drilling of such well."

No complaint is made of this charge. Both parties introduced the opinion of those familiar with conditions as to what the drilling of a test well would be reasonably worth to the owners of nearby acreage, and as to what contribution would ordinarily be made for such a test well. The verdict was well within the limits of such evidence.

■ It is contended that prejudicial error was committed in permitting witnesses to testify as to the amount that such a test well would increase the value of nearby leases. Appellant, in its brief, says: "The testimony of plaintiffs discloses that the drilling of a well operates invariably to enhance the value of nearby leases, and that this, of course, is a matter of most common knowledge and general understanding." To claim that it is error to permit witnesses to testify to this fact of common knowledge is to make a fetich out of procedural rules. How much that increase would be is not a matter of common knowledge, and has a pertinent bearing upon the pivotal issue as to the contribution that a reasonably prudent owner of nearby acreage would make toward such a test. The appellant understood the pertinency of such evidence on the trial, for it offered evidence as to the value of such leases with a test well being drilled. Appellant, in this court, states that it offered such evidence "as bearing upon what contribution might be ordinarily expected from a prudent owner thereof." This is a sound reason for its admission, but appellant has no monopoly on it; the same rule is applicable to appellees. In an action for attorney's fees, expert opinion evidence is competent; but so likewise is evidence as to the time spent, the amount in controversy, the outcome of the litigation, the benefits to the client from the litigation, and other matters bearing directly upon the point at issue, the value of the service. And so where the issue is the value of information: Opinion evidence is competent but not exclusive; other evidence, such as what others usually pay, the value of the service, increased value of acreage, and perhaps other facts, have a direct and pertinent bearing upon the ultimate fact in issue. For an exhaustive treatment of such evidentiary matters as bearing upon value of services, see Wigmore on Evidence (2d Ed.) vol. I, § 463.

Counsel suggest that the jury may have allowed double damages, that is, for the increase in value of the acreage as well as the contribution that a prudent person would make to secure that increase. The suggestion is without support in the record. Double damages could not have been assessed under the charge of the court, and there is no ground for intimating that the jury did not comprehend its duty nor faithfully discharge it.

■ Defendant's president testified that a prudent owner of plaintiffs' lands would have contributed no more than $2,000 toward the test well; that the enhancement in value of the leases was the basis for such a contribution. On cross-examination he was asked the price at which he had agreed to sell certain offset leases. This was objected to. There is no substance in the objection. If a witness testifies to the value of a farm, it is certainly competent, proper and customary to ask him on cross-examination as to the price for which he had sold another farm in the same neighborhood.

■ Error is assigned because the trial court, in the narrative part of the charge, said that the evidence showed that the Pure Oil Company would make a dry hole contribution of $3,000. The court correctly narrated the testimony. The manager of the Pure Oil Company testified:

"Q. Did you tell those men your company would make a dry hole contribution of $3,000

toward the drilling of that well? A. Yes, sir."

But even if the statement were inaccurate, the court made it clear that it was but his recollection of the testimony, and charged the jury that they were the sole judges of the evidence. He did not withdraw from the jury any essential fact upon which there was a conflict in the evidence.

The defendant, without justification, repudiated its contract. The case has been fairly tried and a reasonable verdict rendered. The judgment is

Affirmed.