**William S. KNITTEL, d/b/a Knittel Furniture Company, Appellee,**

v.

**SECURITY STATE BANK, MOORELAND, Oklahoma, a State Banking Corporation, Appellant.**

No. 49831.

Supreme Court of Oklahoma.

April 3, 1979.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick by Clyde A. Muchmore, Richard C. Ford, Oklahoma City, for appellee.

A. P. Murrah, Jr., Jack L. Kinzie, Andrews, Mosburg, Davis, Elam, Legg & Bixler, Oklahoma City, for appellant.

BARNES, Justice:

This case involves an appeal from a jury verdict in favor of the defendant, William S. Knittel, rendered in an action on a note brought by the Security State Bank of Mooreland, Oklahoma. More precisely, the Bank appeals from the Trial Court's overruling of its Motion for Directed Verdict, and its Motion for Judgment Notwithstanding the Verdict. The facts giving rise to the controversy between the Bank and Mr. Knittel are as follows:

By virtue of numerous loans, evidenced by various notes and security agreements, Mr. Knittel was, in September of 1974, indebted to the Bank in the principal amount of approximately $55,000.00. As a condition for receiving one of those loans, which was guaranteed by several local creditors of Mr. Knittel, on a pro rata basis, Mr. Knittel agreed to accept the Bank's aid in keeping his books, and that checks drawn on his account would need to be co-signed. Approximately three months after this agreement, in September of 1974, Mr. Knittel approached the president of the Bank, indicating that he wished to conduct a public auction in order to reduce his furniture store inventory, which was used as collateral to secure the debts involved. After some discussion, the Bank president consented to this sale, which took place on September 21st. As he was preparing to conduct that auction, Mr. Knittel consulted a Mr. Rodney Stine, a bank employee who was helping Mr. Knittel with his books, and with whom Mr. Knittel visited every Monday morning in order to bring his books up to date. He asked Mr. Stine if it might not be possible for him to wait until after the auction in order to bring his books up to date and make an installment payment of $555.00, which was due on September 15th. After supposedly checking with the Bank president,[1] Mr. Stine informed Knittel that he could make the installment payment after the auction and bring his books up to date at that time. The $555.00 installment payment was tendered to the Bank on September 30th. Prior to that time, the proceeds of the auction had been deposited by Knittel in one of his accounts at the Bank. Shortly after the deposit was made, the Bank, allegedly taking advantage of an acceleration provision, applied the net proceeds of the auction to Knittel's indebtedness.

Subsequently, Knittel brought an action against the Bank for conversion of his funds, and the Bank, in a cross-petition

1. Mr. Rymer, the bank president, denied that Mr. Stine ever consulted with him regarding Knittel's request to delay payment. Mr. Stine himself was never called to testify.

alleging that acceleration had taken place, sought to recover the full amount then owed by Knittel, approximately $34,000.00.

Knittel's action in conversion was dismissed prior to trial, and the Bank's cross-petition went to trial as scheduled, with the Bank as plaintiff and Knittel as defendant. By way of Special Instructions, the jury found that there had been no default on Knittel's part, and also found that there had been no acceleration of the debt by the Bank.

On appeal, the Appellant Bank argued, among other things, that the Trial Court erred in submitting the issue of default and the issue of acceleration to the jury. In so arguing, the Bank maintains that the undisputed facts and evidence were sufficient to establish default and acceleration as matters of law.

The default provision of the Security Agreement provided in part:

"EVENTS OF DEFAULT. Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

"1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

\*     \*     \*     \*     \*     \*

"5. Any time the Bank believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired; \* \* \*."

The remedies provision of the same Agreement provided, in part:

"REMEDIES. Upon such default and at any time thereafter Bank may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Bank. \* \* \*"

The Bank based its right to accelerate the notes upon Knittel's failure to make the September 15th installment payment on

time, and upon its believing that the prospect of payment or performance by Mr. Knittel was impaired.

By way of Special Interrogatories, the jury found that the Bank had agreed that Mr. Knittel could make his September 15th payment after the auction, and additionally found that the Bank did *not* in good faith believe that the prospective payment or performance by Knittel was impaired. The Bank, on appeal, does not argue that it was error to submit the question of prospective performance to the jury, but, rather, argues that Mr. Knittel, as a matter of law, was in default when he failed to make his September 15th installment payment on time. In making this argument, the Bank puts great reliance upon the provisions of 15 .O.S.1971, § 237, which provide:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

The Bank contends that even if it had orally agreed to allow Knittel to make his payment after the auction, such an oral agreement could not, under the above quoted statute, be said to have modified the written contract—and thus did not effectively alter Knittel's obligation to make the September 15th payment when due.

■ While we would agree that a written contract may not be altered, modified or changed by an unexecuted oral agreement, such does not in any way negate Mr. Knittel's defense which was ultimately presented to the jury on the basis of *estoppel,* with the jury determining whether the Bank, by virtue of an agreement to allow late payment, was estopped from requiring literal compliance with the written contract.

■ In addressing the issue of estoppel, we first note that in order to present the issue of estoppel, it is sufficient if the facts and circumstances giving rise to the defense of estoppel appear on the face of the defendant's answer, and such facts are satisfactorily supported by the evidence. *Palmer v. Crews Lumber Co., Inc., Okl.,* 510

*P.2d 269 (1967).* In the case before us, the facts setting out the defense of estoppel were plead by Mr. Knittel, and he is therefore entitled to raise the issue regardless of the fact that he did not actually use the word "estoppel" in his pleadings.

■ We next consider whether estoppel is a defense cognizable at law, as well as equity. We hold that it is. In *Walker Valley Oil & Gas Co. v. Parks & Palmer, 128 Okl. 286, 262 P. 672 (1928),* we stated:

"Under our law (section 5081, C.O.S. 1921), a contract in writing can be altered or modified only by a contract in writing, or by a subsequent oral agreement fully executed. But this does not, under certain circumstances, prevent the full operation of the principle of equitable estoppel to preclude a party to a written contract from demanding a literal compliance therewith by one who, in good faith, has relied upon the conduct of the other party, and has been led thereby to change his position in such a manner that it would work a fraud or injury to refuse to give him the benefits of the original agreement or so much thereof as in justice and equity he would be entitled to under the general principles of the law of contracts."

In that case, we cited, with approval, *Pomeroy on Equity Jurisprudence (4th Ed.), Vol. 2, § 804,* which provides:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, *both at law and in equity,* from asserting rights which might have perhaps otherwise existed, either of property, *of contract,* or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, *of contract,* or of remedy." [Emphasis added]

■ In the case before us, the statement by the Bank's employee that the installment need not be paid when due is, we hold, properly characterized as a statement of intent impliedly assuring the debtor that the creditor would not consider the late payment a default. Viewing the actions of the Bank in this respect, we hold that the issue of estoppel was properly submitted to the jury, as the elements of promissory estoppel were present, if Knittel's evidence was believed by the jury.[2]

In addressing a quite similar fact situation, the Utah Supreme Court, in *Williamson v. Wanlass, Utah, 545 P.2d 1145 (1976),* held that:

"The clause which allows for acceleration in case of default, if strictly enforced, is a severe covenant, the invocation of which has similarity to other forfeitures. The imposition of such severe conditions is not favored in the law; and one who seeks to impose them must not, either by acts or omission permit another to assume that the covenant will not be strictly enforced, then 'crack down' on the obligor by rigidly insisting on enforcement, without giving some reasonable notice and opportunity to comply. This is a doctrine of equity which is firmly established in our law * * *." [Footnote omitted]

■ For the above stated reasons, we hold that the defense of estoppel was properly presented to the jury, and that the Bank's contention that default, as a matter of law, was present, is not a sound one.

Having held that the issue of default was properly presented to the jury, we need not, in light of the jury's determination that no default was present, consider the issues presented upon appeal with respect to acceleration, as the right to accelerate was based upon the default having taken place.

■ We must, however, consider the Bank's contentions that the instructions given the jury on the issue of default were improper and constitute reversible error. In the instructions, with respect to default, the jury was instructed as follows:

"The 'acceleration' clause involved in this matter is on the reverse side of the

2. See *Sellers v. Sellers,* Okl., 428 P.2d 230 (1967).

Security Agreement dated January 9, 1973.

"The pertinent parts insofar as this case is concerned are:

" 'Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

5. Any time the Bank believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired. Upon such default and at any time thereafter Bank may declare all obligations secured hereby immediately due and payable . . .'

"The law of this state provides that the above provisions for acceleration shall be construed to mean that the Bank shall have the power to accelerate only if it in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on Knittel.

" 'Good faith' means honesty in fact in the conduct or transaction concerned."

The Bank contends that this instruction unfairly connotes that the "good faith" requirement also applies to default in payment. We do not agree. The instruction, by its own terms, limits the "good faith" requirement to "prospect of payment or performance." We hold that the instruction as a whole was clear.

Lastly, we consider the Bank's contention that the Court committed reversible error by failing to instruct the jury that impairment of collateral constituted an event of default. Under an additional term of the Security Agreement involved, the "loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon", constituted an event of default.

The Bank argues that it was clearly the intent of the parties that impairment of the collateral, by way of sale or otherwise, was an event of default. Although impairment of the collateral was listed as an event of default in the Security Agreement, the Bank did not allege impairment of collateral as an event of default in its cross-petition. This being the case, we cannot say that the Trial Court's refusal to instruct on such an issue was reversible error, as the issue sought to be instructed on was not properly an issue in the case. In so holding, we are cognizant of the fact that some evidence of the sale of the collateral was introduced during the trial, but such evidence was clearly admissible by the Bank in order to show why it deemed itself to be insecure. Knittel's failure to object to the introduction of such evidence on the ground of variance therefore could not be viewed as acquiescence to the trial of a new issue not raised in the pleadings.

For the above stated reasons, we hold that the Trial Court did not commit reversible error either in submitting the issue of a default to the jury, or instructing the jury. This being the case, we affirm the judgment rendered below.

AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in result.