**DILLARD & SONS CONSTRUCTION, INC., Plaintiff–Appellee,**

v.

**BURNUP & SIMS COMTEC, INC., Defendant–Appellant.**

**Nos. 93–7090, 93–7101.**

United States Court of Appeals, Tenth Circuit.

April 4, 1995.

Order Clarifying Opinion May 12, 1995.

D.D. Hayes (Juliet N. Brennan with him on the brief) of Bonds, Matthews, Bonds & Hayes, Muskogee, OK, for defendant-appellant.

Gary L. McKnight, McAlester, OK, for plaintiff-appellee.

Before KELLY and HENRY, Circuit Judges, and VAN BEBBER,* District Judge.

HENRY, Circuit Judge.

This Oklahoma diversity suit arises out of an independent subcontractor agreement between the plaintiff-appellee, Dillard & Sons Construction, Inc. (Dillard), and the defendant-appellant, Burnup & Sims Comtec, Inc. (Burnup). Burnup appeals from a jury verdict awarding Dillard $73,795.05 for its breach of contract claim and finding against Burnup on its counterclaim. We reverse the district court's judgment and remand the case for a new trial.

## BACKGROUND

In February of 1992, Dillard entered into an independent contractor agreement with Burnup to install underground telephone cable for the benefit of Burnup's customer, Contel of Missouri, Inc., d/b/a GTE. Four projects stemmed from this agreement, three in Oklahoma, and one in Annapolis, Missouri. Only the Missouri project is at issue in this appeal.[1]

Pursuant to the Missouri contract, Dillard was to install 102,314 feet of cable. Dillard began work on the project in early July. Burnup's superintendent was on-site and signed time and billing sheets, agreeing upon the units placed by Dillard on a daily basis. *See* Subcontractor Guidelines ¶ 6, Aplt.App. at 104; Letter of Authorization dated July 7, 1992, Aplt.App. at 106.

Although there was conflicting testimony at trial as to a specific date, witnesses for both parties agreed that sometime during mid-to-late August the President of Dillard & Sons Construction, Mike Dillard, approached Burnup's Division Manager, Jim Bartlett, to request payment of past retainage due on two of the Oklahoma projects and payment for work-in-progress on the third Oklahoma project and the Missouri project. Mr. Bartlett indicated to Mr. Dillard that he would receive payment shortly, but then continued to withhold the money. Mr. Bartlett admitted at trial that Burnup's payments were overdue at that time, and that Burnup never made any payments to Dillard for work on the Missouri project. Mr. Bartlett also testified that shortly after this meeting Burnup became aware that certain portions of the cable had been buried at a depth of less than twenty-four inches, which was allegedly not in compliance with the contract specifications, and that Dillard had begun taking steps to lower the cable. Mr. Bartlett then wrote a letter to Dillard confirming both that there was a problem with the depth of the cable and that Dillard would continue working to lower it. The letter was dated August 31, 1992. On September 1, 1992, Mr. Dillard made a second oral demand for payment of money due. Upon Burnup's refusal to pay, Dillard walked off the project.

Dillard then brought suit in the district court, arguing that Burnup breached the contract by refusing to make timely payments while Dillard was allegedly complying in good faith with Burnup's request to lower the cable. Burnup counterclaimed, contending that Dillard failed to substantially perform the contract because it placed 28,000 to 34,000 feet of the cable at less than a twenty-four inch depth. Additionally, Burnup argued that its delay in paying Dillard did not constitute a breach of the contract because payment was not due until Dillard substantially performed the installation pursuant to the contract's terms. Burnup also sought damages for the expense it incurred by hiring a third party to lower the cable.

At trial, there was undisputed testimony that 28,000 to 34,000 feet of cable had been

---

* The Honorable G. Thomas Van Bebber, United States District Judge for the District of Kansas, sitting by designation.

1. The jury instructions in this case stated:
   In this lawsuit you are not to determine liability and assess damages on these three other projects. The defendant has admitted and the Court has found that defendant owes plaintiff seventeen thousand four hundred and eighty-one dollars in retainage on these other three projects. In this lawsuit you are only to determine liability and assess damages, if any, on the parties' claims on the Annapolis, Missouri, project.
   Rec. vol. III, at 666. After the jury returned its verdict in favor of Dillard in the amount of $73,795.05, the court entered judgment against Burnup in the amount of $91,276.05 in order to account for the $17,481.00 retainage due on these other projects. *See* Judgment of May 20, 1993, Aplt.App. at 29.

buried at a depth of less than twenty-four inches.[2] However, the evidence indicated that the other 68,000 to 74,000 feet of cable had been buried at a twenty-four inch minimum depth. Burnup's Executive Vice President also testified at trial that Burnup had received close to $50,000 from its customer, GTE, for work approved by GTE that was attributable to Dillard.

At the close of Dillard's evidence and at the close of trial, Burnup moved for Judgment as a Matter of Law as to both Dillard's breach of contract claim and its own counterclaim pursuant to Fed.R.Civ.P. 50. These motions were denied. Additionally, Burnup requested a jury instruction stating that interpretation of the contract was a matter of law for the court and that the court construed the contract to provide for a twenty-four inch minimum depth requirement. This request was denied. The jury then returned a verdict in favor of Dillard in the amount of $73,795.05.

Burnup raises several issues on appeal. First, Burnup argues that it is entitled to judgment as a matter of law as to Dillard's claim and a new trial on Burnup's counterclaim because the contract unambiguously required a twenty-four inch minimum depth for burial of the cable. In this regard, Burnup argues that the trial court erred by refusing to construe the contract's terms with regard to the depth requirement and by submitting to the jury a question that Burnup argues is an issue of law. Additionally, Burnup contends that the jury could not have reasonably found that Dillard substantially performed the contract or that the contract's twenty-four inch depth requirement had been modified in any way. Burnup also argues that the district court should have granted its

request for remittitur of the damages award to account for the cost of remedying the shallow cable depth. Lastly, Burnup appeals the attorney fees and costs awarded to Dillard by the district court.

### DISCUSSION

Both parties agree that the Annapolis, Missouri contract consists of three documents: an Independent Contractor Agreement, Subcontractor Guidelines, and a Letter of Authorization, also known as the Unit Description.[3] These three documents do not contain specifications for burial of the cable. Rather, these documents refer to Burnup's contract with GTE: The Subcontractor Guidelines provide that "[a]ll units placed must be placed per Burnup & Sims contract with their customer." Subcontractor's Guidelines ¶ 5, Aplt.App. at 104. Additionally, the Independent Contractor Agreement requires the "Independent Contractor [to] satisfy all applicable federal, state and local safety and electrical codes, and all applicable safety regulations...." Independent Contractor Agreement ¶ 5, Aplt.App. at 99.

The Letter of Authorization, addressed to Dillard and signed by Burnup's Division Manager, describes the type of cable to be buried, the price per unit, and the estimated quantity. The letter also provides:

All units must be completed per contract specifications and agreed upon daily with our superintendent....

....

After all units are agreed upon with our customer you will receive payment. Retainage that is held will be paid once we have received our retainage from our customer [and] all known claims against your company have been resolved....

*THE FOLLOWING ISSUES OF FACT, AND NO OTHERS, REMAIN TO BE LITIGATED UPON THE TRIAL*
A. Whether 28,000 to 34,000 feet of cable was buried at Annapolis, Missouri, at a depth of less than twenty-four inches.
Amended Pre–Trial Order at 6, Aplt.App. at 16.

---

**2.** Although Dillard did not stipulate that 28,000 to 34,000 feet of cable was buried at a depth of less than twenty-four inches, it did agree that such evidence would not be contested at trial. The Amended Pre–Trial Order read:

*THE FOLLOWING FACTS, THOUGH NOT ADMITTED, ARE NOT TO BE CONTESTED AT THE TRIAL BY EVIDENCE TO THE CONTRARY:*
Plaintiff will not contest at trial evidence that 28,000 to 34,000 feet of cable on the Annapolis, Missouri project was buried at a depth of less than twenty-four inches.
....

**3.** "Oklahoma adheres to the widely-accepted rule that when several contracts relating to the same matter are made by the parties as parts of one transaction, all of the instruments should be construed together." *F.D.I.C. v. Hennessee*, 966 F.2d 534, 537 (10th Cir.1992).

Letter of Authorization dated July 7, 1992, Aplt.App. at 106.[4]

### Twenty–Four Inch Depth Requirement

■■■ Burnup argues that the district court erred by not construing the contract's specifications for cable depth as a matter of law and by submitting this issue to the jury. Under Oklahoma law, it is well-settled that the interpretation of an unambiguous contract is a question of law for the court. *See Devine v. Ladd Petroleum Corp.*, 805 F.2d 348, 349 (10th Cir.1986); *CMI Corp. v. Gurries*, 674 F.2d 821, 825 (10th Cir.1982); *Ferrell Const. Co. v. Russell Creek Coal Co.*, 645 P.2d 1005, 1007 (Okla.1982). Whether a contractual provision is facially ambiguous is also a legal question. *First Nat'l Bank & Trust Co. v. Kissee*, 859 P.2d 502, 507 (Okla. 1993) (per curiam). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," Okla.Stat. tit. 15, § 154; *see also Armstrong v. Federal Nat'l Mortgage Ass'n*, 796 F.2d 366, 371 (10th Cir. 1986) ("Clear and unambiguous contracts should be enforced as written.").

■■■ After reviewing the three documents that make up the Annapolis, Missouri contract in this case, we hold that the contract unambiguously required the cable to be buried at a minimum depth of twenty-four inches unless an exception contemplated by the parties' agreement was encountered. First, the Subcontractor Guidelines clearly state that "[a]ll units placed must be placed per Burnup & Sims contract with their customer." Subcontractor Guidelines ¶ 5, Aplt. App. at 104.[5] A review of the documents also makes clear that the parties intended the cable to be placed for the benefit of Burnup's customer. *See id.* ¶ 11 ("All units placed must be approved by our customers [sic] representative prior to payment being

made to your company."); Letter of Authorization dated July 7, 1992, Aplt.App. at 106 ("It is *very important* that all units placed are noted on the *timesheets* as they appear in *our contract with our customer....*"); *Id.* ("After all units are agreed upon with our customer you will receive payment."). "The cardinal rule by which we are controlled in interpreting [this] contract[ ] is to ascertain the intention of the parties thereto as expressed therein,...." *Continental Supply Co. v. Levy*, 121 Okla. 132, 247 P. 967, 968 (1926); *see also* Okla.Stat. tit. 15, § 152 ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful.").

■■■ Given the express language of the contract and the clear evidence of the parties' intent, we hold that the contract's language was clear and unambiguous in that it required the cable to be placed in compliance with Burnup's contract with GTE. After examining the GTE contract, we hold that it clearly and unambiguously required the cable placed in soil to be buried at a minimum depth of twenty-four inches. Part II of the GTE contract delineates "Specifications for Construction and Installation." Aplt.App. at 146. Subpart 4.3.1 states:

> Unless otherwise specified by the Engineer in the Proposal, or on the Construction Sheets, the depth of buried cable either plowed or trenched, measured from the top of the cable to the surface of ground or rock shall be as listed in the following table:

| | |
|---|---|
| Minimum depth in soil | 24″ (60.96 cm) |
| Minimum depth at ditch crossings and laterals | 36″ (91.44 cm) |
| Minimum depth in rock | 6″ (15.24 cm) |

Aplt.App. at 150.

■■■ We are also mindful that there is a second reason for finding that the contract

---

4. The letter also included very brief instructions regarding each type of unit. In general, none of these instructions specified a depth for burial of the cable. However, as to the estimated 500 feet to be buried in rocky areas (less than one percent of the total cable to be buried), the letter read: "Rock: 24″ minimum depth on state/city right of way, 6″ on private or county right of way." Letter of Authorization dated July 7, 1992, Aplt. App. at 107. Nowhere else in the three docu-

ments did the parties state a depth for burial of the cable.

5. Parties to a contract may incorporate an independent document by clear reference to it, thereby making it part of the agreement. *See Armstrong v. Federal Nat'l Mortgage Ass'n*, 796 F.2d 366, 371 (10th Cir.1986).

unambiguously required a twenty-four inch minimum cable depth. "[I]t is well settled that the existing applicable law is a part of every contract, the same as if expressly referred to or incorporated in its terms." *East Cent. Oklahoma Elec. Coop., Inc. v. Public Service Co.,* 469 P.2d 662, 664 (Okla.1970); *see also Farmers & Merchants Bank v. Federal Reserve Bank,* 262 U.S. 649, 660, 43 S.Ct. 651, 655–56, 67 L.Ed. 1157 (1923); *Montoya v. Postal Credit Union,* 630 F.2d 745, 748 (10th Cir.1980); *Welty v. Martinaire of Oklahoma, Inc.,* 867 P.2d 1273, 1276 (Okla. 1994). This rule encompasses acts of the state in the legitimate exercise of its police power. *E.g., Hixon v. Snug Harbor Water & Gas Co.,* 381 P.2d 308, 313 (Okla.1963) (Corporation Commission order setting rate schedules is binding as though incorporated into the contract). Pertinent provisions of state law—and acts of the state in a legitimate exercise of its police power—are just as enforceable in a suit based on a contract as any other contractual provision. *See Welty,* 867 P.2d at 1276. Furthermore, the Independent Contractor Agreement in this case specifically required compliance with "all applicable federal, state and local safety and electrical codes, and all applicable safety regulations." Independent Contractor Agreement ¶ 5, Aplt.App. at 99.

■ It is of no small moment, therefore, that the excavation permit issued by the Missouri Highway and Transportation Commission for the Missouri project required that all cable buried on Missouri state highway right-of-way be placed at a minimum depth of twenty-four inches. This excavation permit served to incorporate a twenty-four inch depth requirement for burial of the cable on state highway right-of-way.[6]

### *Jury Instructions*

Given the unambiguous nature of the twenty-four inch minimum depth requirement, Burnup argues that the district court committed prejudicial error by submitting the case to the jury without an instruction regarding the contract specifications for depth. Burnup relies on the Oklahoma rule, set out above, that the interpretation of an unambig-

uous contract is a question of law for the court. *See Kissee,* 859 P.2d at 507.

Burnup did propose such an instruction. *See* Aplt.App. at 28. The district court denied this request, and instead instructed the jury as follows:

In interpreting a contract between parties, you shall find the mutual intention of the parties as it existed at the time of the contract. In this regard you shall consider all the evidence under which the contract was made and the subsequent acts and conduct of the parties acting under said contract. It is proper to construe any doubtful provisions of a written contract against the parties who prepared the contract. Also you should consider all documents executed by the parties in relation to the Annapolis, Missouri, project in evaluating the parties' breach of contract claims.

Rec. vol. III, at 668–69.

■ Although the substance of jury instructions is a matter of state law, the determination of whether to grant or deny proposed instructions is procedural, and is governed by federal law. *Palmer v. Krueger,* 897 F.2d 1529, 1532 (10th Cir.1990). Thus, federal law controls the determination of whether an error in the instructions requires reversal. *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1046 (10th Cir.1993). Jury instructions must be reviewed as a whole to determine whether they properly stated the applicable law and provided an ample understanding of the applicable standards. *Brown v. Wal–Mart Stores, Inc.,* 11 F.3d 1559, 1564 (10th Cir.1993). The instructions need not be entirely free from fault, but they may not serve to mislead the jury in any way. *Shamrock Drilling Fluids, Inc. v. Miller,* 32 F.3d 455, 459 (10th Cir.1994). The erroneous submission of an issue to the jury will require reversal when the jury has rendered a general verdict in the face of more than one issue, thereby precluding a determination by the reviewing court as to whether the jury relied on the improper ground. *Farrell v. Klein Tools, Inc.,* 866 F.2d 1294, 1299 (10th Cir. 1989).

---

**6.** There was testimony at trial that most of this type of cable is buried in state highway right-of-

way. *E.g.,* Rec. vol. I, at 75, 203.

■ Although the district court's pretrial order stated that "[w]hether the contract between the parties contains specifications for cable depth" was an issue of *law*, Aplt.App. at 25, the district court allowed the parties to present voluminous evidence at trial regarding the contract's specifications for cable depth, *see, e.g.*, Rec. vol. I, at 21, 47–48, 185, 195, 199; Rec. vol. II, at 294, 345–46, 374, 401–02, 441–42; Rec. vol. III, at 621.[7] Because of the amount of time at trial that was devoted to putting on evidence of the depth requirement, we believe that the jury may have interpreted the court's instruction to allow the jury to construe the contract's provisions for cable depth. Consequently, the district court erred by submitting a question of law to the jury for decision.

■ Because the jury rendered a general verdict, however, we are unable to determine what effect this had on its deliberations. The jury might have found for Dillard due to a belief that the contract did not require the cable to be buried at a twenty-four inch minimum depth. On the other hand, the jury could have believed that Burnup breached the contract prior to any knowledge of the cable depth while Dillard had substantially performed in good faith under the contract.

In *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294 (10th Cir.1989), we considered the effect of the improper submission of an issue to the jury. In that case, the district court had improperly submitted the "abnormal use" defense to the jury, which then returned a general verdict in favor of the defendant. Although this court found it "very unlikely that the submission of the instruction on the abnormal use defense 'significantly influenced' the jury or prejudiced [the plaintiff's] 'substantial rights,'" *id.* at 1301 (quoting *Asbill v. Housing Auth. of the Choctaw Nation*, 726 F.2d 1499, 1504 (10th Cir.1984)), we nevertheless were compelled to reverse and remand the case for a new trial. We did so in light of the "general rule ... that when one

of two or more issues submitted to the jury was submitted erroneously, a general verdict cannot stand because it cannot be determined whether the jury relied on the improper ground." *Id.* at 1299.

■ In *Hearst Corp. v. Cuneo Press, Inc.*, 291 F.2d 714 (7th Cir.1961), the Seventh Circuit recognized that this rule applies with equal force when an issue of law is improperly submitted to the jury for resolution:

> [A]n instruction upon an issue which is not supported by any evidence may require a reversal of a judgment based upon a general verdict if the instruction was inclined to lead the jury to attach to a part of the evidence a significance which such evidence lacked. *A similar situation is presented on this appeal in which appellants principally contend that the court submitted questions of law to the jury for decision.* If those contentions be sound, the general verdict may rest upon the jury's decision of a question of law erroneously submitted to it, and a reviewing court could not say that decision of the factual issues, irrespective of the weight of supporting evidence, was not affected by the error of permitting the jury to determine both the issues of fact and issues of law.

*Id.* at 717 (emphasis supplied) (citation omitted). We agree with the Seventh Circuit that the erroneous submission of a legal question to the jury compels reversal when the jury returns a general verdict, creating uncertainty as to whether the jury relied upon an improper resolution of the legal issue.

Because the trial court erred in submitting a question of law to the jury and the jury "might" have based its verdict on this erroneous instruction, *see Adams–Arapahoe Joint School Dist. No. 28–J v. Continental Ins. Co.*, 891 F.2d 772, 779 (10th Cir.1989),

---

7. On appeal, "Dillard emphatically insists that all issues were disputed and specifically the interpretation of depth requirements in its contract...." Brief of Appellee at 9. Dillard therefore argues that because the depth requirement

was disputed, it was ambiguous and was properly submitted to the jury. As we have already stated, however, we believe that the specifications for cable depth were unambiguous so as to make it a question of law for the court.

the judgment must be reversed and the case remanded for a new trial.[8]

REVERSED and REMANDED.

## ORDER

May 12, 1995

This matter is before the court on plaintiff's motion for clarification. On April 4, 1995, this panel reversed the judgment of the district court and remanded the case for a new trial. This panel's opinion is now clarified in the following respects: Only the portion of the judgment entered pursuant to the jury verdict returned on May 6, 1993 in the amount of $73,795.05 is affected by this panel's opinion. Further, the district court's orders awarding attorney's fees and taxing costs in favor of the plaintiff are hereby vacated and remanded to the district court for recalculation in light of the panel's opinion.

---

8. In addition to arguing that the contract did not require the cable to be buried at a twenty-four inch minimum depth, Dillard alternatively argued that (1) Burnup had modified the contract's minimum depth requirement through the actions of its agent, who allegedly permitted the cable to be buried shallow, or that (2) Dillard had substantially performed in good faith under the contract. The district court allowed both theories to go to the jury. *See* Rec. vol. III, at 670–72.

Because we believe that under the facts presented at this trial a jury could reasonably find that Dillard substantially performed the contract, Burnup is not entitled to judgment as a matter of law in this case. *See Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988) (A district court's denial of judgment as a matter of law is in error "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found.").

With regard to the modification argument, however, we feel compelled to note that "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Okla.Stat. tit. 15, § 237. "[A]n 'executed oral agreement' must be established by positive, clear and convincing evidence." *Creekmore v. Redman Indus., Inc.*, 671 P.2d 73, 79 (Okla.Ct.App.1983). On the other hand, Section 237 does not repeal all of the common law regarding waiver and estoppel, *see Bu–Vi–Bar Petroleum Corp. v. Krow*, 47 F.2d 1065, 1066 (10th Cir.1931), and the facts of this case are strikingly similar to those in *Walker Valley Oil & Gas Co. v. Parks & Palmer*, 128 Okla. 286, 262 P. 672 (1928) (per curiam) (equitable estoppel prevented party from claiming benefit under contract that was waived by party's agent). However, we seriously doubt that any set of facts could serve to modify the provisions for minimum cable depth that were incorporated by operation of law. *See supra* note 6 and accompanying text; *Dobry v. Dobry*, 262 P.2d 691, 693 (Okla.1953) (Provisions of corporate bylaws "are presumed to be made in contemplation of existing law and where inconsistent therewith or in contravention thereof, the law, of course, will control.").