2003 OK 42

### Timothy Ray BARNTHOUSE, Ancel Scott Fees and James Dallas Teel, II, Plaintiffs/Appellants,

v.

### CITY OF EDMOND, a municipal corporation and Dennis Cochran, individually and in his capacity as the Chief of Police of the City of Edmond, Defendants/Appellees.

No. 97,350.

Supreme Court of Oklahoma.

April 22, 2003.

Philip W. Anderson, Kent R. McGuire, Oklahoma City, OK, for Appellants.

Richard J. Goralewicz, Oklahoma City, OK, and Stephen T. Murdock, City of Edmond, Edmond, OK, for Appellees.

## OPINION

WATT, Vice Chief Justice.

¶ 1 The dispositive questions in this appeal are: (1) Did Appellants have a property interest in their employment and rank as Sergeants? (2) If so, did Appellees deprive them of that interest and violate their due process rights by demoting them without a hearing? (3) Did the trial court erroneously hold City and Cochran were entitled to judgment as a matter of law? We answer all questions in the affirmative. We reverse the trial court's order granting summary judgment in favor of the City of Edmond and Chief of Police Cochran, and remand to the trial court.

## I.

### PROCEDURAL BACKGROUND

¶ 2 Timothy Ray Barnthouse, Ancel Scott Fees and James Dallas Teel, II, (Appellants) are police officers for the Appellee, City of Edmond. Their employment is subject to a collective bargaining agreement (CBA), between the City and the Fraternal Order of Police, Lodge No. 136 (F.O.P.), which is governed by the Fire and Police Arbitration Act, 11 O.S.1991 § 51–101 et seq., (the FPAA). On July 30, 1998, Appellant Fees was promoted to Sergeant, and on October 31, 1998, Appellants Teel and Barnthouse were promoted to Sergeant. Effective April 26, 2000, they were notified in writing by City's Chief of Police, Appellee Dennis Cochran, that they were being "demoted" to their previous rank. They filed grievances in accordance with the CBA. The grievances were denied by Cochran and the F.O.P., and they filed this action in district court against City and Cochran, individually and as Chief of Police. Alleging they had a protected property interest in their continued employment as Sergeants and in not being demoted without cause, Appellants sued for the following claims:

 a. Violations of their due process rights, under the 14th Amendment of the Constitution of the United States, and Art. 2, § 7 of the Oklahoma Constitution;

 b. Relief under 42 U.S.C. § 1983 for depriving Appellants of their constitutional rights pursuant to City's policies and a deliberate choice to demote them;

 c. Negligence for breaching their duty to Appellants to administer properly the written examinations and assessment centers in accordance with their own policies and procedures;

 d. Breach of contract;

 e. Intentional infliction of emotional distress; and

 f. Negligent infliction of emotional distress.

They each sought damages in excess of $10,000.00.

¶ 3 Cross motions for summary judgment were filed. The trial court denied Appellants' motion for partial summary judgment and granted the motions filed by City and Cochran. This appeal was brought pursuant to Supreme Court Rule 1.36, Accelerated Procedure for Summary Judgments and Certain Dismissals, 12 O.S.2001, Ch. 15, App. 1.[1] Appellants contend they are appealing only the orders granting Appellees' motions for summary judgment. However, the parties refer to responses and evidentiary matters attached to Appellants' motion for partial summary judgment. Therefore, the issues raised therein are considered to the extent necessary.

## II.

### FACTUAL BACKGROUND

¶ 4 Appellants took part in the promotional process for the rank of Sergeant, which is

---

1. In their petition in error, Appellants raised six issues on appeal:

 1. Whether the filing of a formal grievance by a police officer against a municipality for not properly conducting a promotional process prevents other police officers promoted from that process from obtaining a property interest in the rank they were promoted to.

 2. Whether the arbitration hearing resulting in Appellants' demotions provided any protection of the Appellants' property interest in their rank of sergeant.

 3. Whether the arbitrator of an arbitration hearing, where Appellants were denied participation in such hearing, has the authority to direct the City to deprive Appellants of their property interest in the rank of sergeant without due process, and to violate their contractual rights, in order to provide a remedy for another officer's grievance.

 4. Whether the City breached the Collective Bargaining Agreement between the City and the F.O.P. when it demoted Appellants without cause.

 5. Whether Cochran is entitled to qualified immunity where his conduct violated Appellants' right to due process (a constitutional right), and that right was violated by Cochran when it was clearly established at the time of his conduct that Appellants had a protected property interest in their rank of sergeant and had a right to due process before and after deprivation of their rank of sergeant by Cochran and the City.

 6. Whether the trial court abused its discretion entering judgment for the City on Appellants' claims of breach of contract, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress where the City did not move for summary judgment on these claims, no evidence or legal authority were offered in support of such judgment, and where factual issues regarding these claims remain.

comprised of a written examination and an oral "assessment center". At the time, their rank was Detective. This process, which ended on July 29, 1998, culminated in an "eligibility list" of candidates for promotions to Sergeant. The list ranks the candidates in order of their overall scores, and Appellants' names were among the top four positions.[2] Another officer, Dennis Dill, took part in the process, but was ranked at the bottom of the eligibility list and did not receive a promotion. He filed a grievance on August 7, 1998, complaining of the manner in which the assessment center was conducted. An arbitration hearing was held on December 17, 1999. On February 23, 2000, the arbitrator held in favor of Dill on his grievance. He ruled the assessment center was conducted improperly, that the resulting eligibility list was invalid, and that the "assessment center" portion of the promotional process must be repeated. It is undisputed that the Arbitrator's ruling did **not** mention Appellants by name, did not include a finding or recommendation that **Appellants' promotions** were invalid, and did not order that Appellants must be demoted. Nevertheless, after serving as Sergeants for more than one year, Appellants were notified in writing by Cochran that, effective April 26, 2000,[3] they were being demoted as a result of the Dill arbitration award. They were also advised they must participate in the next assessment center, which they did. They did not receive promotions to Sergeant as a result of that promotional process, although two of the Appellants have since been promoted to Sergeant.

¶ 5 Appellants alleged in their motion for partial summary judgment their constitution-al rights were violated, in that their protected property interests in their employment and rank were taken without due process, contrary to § 1983.[4] They also alleged Appellees breached their contractual rights not to be demoted without cause. In Cochran's motion for summary judgment, he raised defenses of qualified immunity as to Appellants' § 1983 claim, immunity as an employee of a political subdivision under the Governmental Tort Claims Act and that he was not a party to the CBA as to Appellants' breach of contract claim. In City's motion for summary judgment, it contended the invalid selection process invalidated the promotions, making them void *ab initio;* that no property interest arose as a result of the selection process; that no property interest exists in a procedure; and that Appellants bear the burden of proof that a property interest exists. City also adopted Cochran's argument as to the qualified immunity defense under § 1983.

### III.

### *DISCUSSION*

¶ 6 As a threshold issue, we consider the argument of City and Cochran that Appellants failed to follow the CBA in pursuing their grievance, thus failing to exhaust their remedies under the CBA. Following their demotions, Appellants filed their grievance on May 10, 2000. After Cochran denied the grievance, it was submitted to the F.O.P., which denied it on June 14, 2000. Appellants did not pursue the grievance proceeding when the F.O.P. denied their grievance. They contended, in their response to Cochran's motion for summary judgment, that

---

2. Under the "Rule of three", the City can promote the officers from the first three names on the eligibility list. As promotions occur, the other names move up the list.

3. At the rank of Sergeant, Appellant Fees served from July 30, 1998 to April 26, 2000, and Appellants Teel and Barnthouse served from October 31, 1998 to April 26, 2000.

4. **42 U.S.C. § 1983 (Supp.1996).** **Civil action for deprivation of rights**

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

they were prohibited from continuing the process because their grievance did not concern a disciplinary action. We agree.

¶ 7 The grievance procedure is covered in Article 10 of the CBA. Section 10.3 provides that the "F.O.P. or any employee may file a grievance" and that "[g]rievances shall be presented within fifteen (15) calendar days of said occurrence or after the F.O.P. becomes aware of said occurrence". Section 10.5 provides the manner in which grievances will be processed. In Step 1, the aggrieved employee shall present the grievance to his or her immediate supervisor, who makes a decision in writing within seven calendar days. It provides:

STEP 1. The aggrieved employee(s) shall present the grievance to the immediate supervisor. It shall be reduced to writing citing the provision or provisions of this Agreement alleged to have been violated, be signed by the aggrieved employee(s). The immediate supervisor shall make their (sic) decision in writing to the employee within seven (7) calendar days of the date of presentation of the grievance.

¶ 8 If Step 1 does not settle the grievance, the aggrieved employee follows Step 2, which provides:

STEP 2. If the grievance is not settled in STEP 1, the aggrieved employee(s) shall present the grievance to the F.O.P. Grievance Committee within seven (7) calendar days of the date of the immediate supervisor's response. The F.O.P. Grievance Committee will make a determination as to the validity of the grievance within (15) calendar days. If the grievance is deemed valid then the grievance will proceed to the next step. **Grievances filed concerning disciplinary actions may be processed by the employee regardless of the F.O.P. Grievance Committee's ruling.** [Emphasis supplied.]

¶ 9 Step 3 provides:

STEP 3. The F.O.P. Grievance Committee or the aggrieved employee(s) shall present the grievance to the Chief of Police within seven (7) calendar days of the date of the Grievance Committee's determination. The Chief of Police shall refer the grievance to a fact-finding committee which shall be composed of four (4) members, two of which shall be selected by the Chief of Police or his designate through impartial, random choice from a list of available officers with supervisory rank, and two of which shall be selected by impartial, random choice by the aggrieved employee(s). The Chief of Police and the aggrieved employee(s) shall have seven (7) calendar days to select the fact-finding committee. The findings and recommendations of this committee must be reached and presented to the Chief of Police within fifteen (15) calendar days from the time of the selection of all parties,. . . .

¶ 10 The emphasized language in Step 2 purports to allow the employee to process a grievance determined invalid by the F.O.P. However, the preceding sentence, "If the grievance is deemed valid then the grievance will proceed to the next step", implies the grievance ends at this step if the F.O.P. finds it is invalid. Considering these sentences together, we interpret the provision to mean that the grievance will end at Step 2 if the F.O.P. finds the grievance is invalid **unless** it involves a disciplinary action; if it does, it continues **only if the employee pursues it further.** Any other interpretation would render the paragraph ambiguous. It is undisputed in this case that Appellants were not demoted for disciplinary reasons. Under the clear language noted above, they were given no further options under the CBA when the F.O.P. denied their grievance. Accordingly, Appellants did exhaust their administrative remedies under the CBA.

IV.

*ALLEGED PROCEDURAL DUE PROCESS VIOLATIONS*

¶ 11 A two-step inquiry is necessary to determine whether a plaintiff was denied procedural due process: (1) did the individual possess a protected interest to which due process protection was applicable? and (2) was the individual given an appropriate level of process? See *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1253 (10th Cir. 1998). To allege a violation of procedural due process rights, a plaintiff must demon-

strate the existence of a legitimate property or liberty interest in his employment. *Hennigh,* at 1253. There must be a "legitimate expectation of continued employment", *Id.* at 1253, citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The existence of a legitimate property right in employment is determined by reference to state law. *Hennigh,* at 1253, citing *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Hennigh was a demoted police officer whose employment was governed by a CBA and the Oklahoma FPAA. The 10th Circuit Court of Appeals stated, at page 1253:

This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest. See *Campbell v. Mercer,* 926 F.2d 990, 993 (10th Cir.1991) ("For example, if a statute, regulation, or policy . . . restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown." (internal quotations omitted)).

■ ¶ 12 The same analysis is used to determine if there is a protected property interest in a particular employment status, such as rank. If a statute or regulation places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause, then a property interest is created. *Hennigh,* at 1254, citing *Williams v. Kentucky,* 24 F.3d 1526 (6th Cir.1994).

¶ 13 Based on its prior holdings interpreting Oklahoma law and the decisions of this Court[5] that matters concerning the FPAA are matters of statewide concern, the *Hennigh* Court held, at 1255:

[P]laintiff had a legitimate property interest in his rank. This property interest was created by state law in the form of the CBA, contracted pursuant to state legislation. The CBA gave Plaintiff a legitimate expectation of continued employment as a lieutenant unless the City found "cause shown."

■ ¶ 14 In the instant case, Article 7, section 7.1(f) of the CBA provides:

The Employer, except as otherwise specifically provided for in this Agreement, retains and reserves unto itself, without limitation, all the powers, rights, authority, duties, and responsibilities conferred upon it and vested in it by the laws of the constitutions of the United States and the State of Oklahoma, the Statutes of the State of Oklahoma, and the Charter of the City of Edmond. Further, all rights, which ordinarily vest in and are exercised by employers are reserved to and remain vested in the Employer, including but not limited to the generality of the foregoing and the following managerial rights:

. . .

(f) To discipline, transfer, *demote,* and discharge employees *for cause,* subject to the grievance procedure rights set out herein in Article 10, if such action falls within the definition of grievance. [Emphasis supplied.]

¶ 15 Additional evidence of a property interest in Appellants' employment and rank is found in the City's General Policy Order, GPO 83–2 Revised, effective June 22, 1998, entitled "Selection Process for Promotion". It provides, under Section V, that candidates from the Assessment Center are placed on an eligibility list for one full year. "At the end of this time period the Promotional Eligibility List shall expire and shall no longer be used." It also provides that the probationary period for a recently promoted officer ends after one year. At that time, the promotion becomes permanent. GPO 86–1 Revised, effective June 22, 1998, entitled "Department Disciplinary Actions", provides that demotions[6] and terminations[7] may only be imposed for cause.

---

**5.** *City of Bethany v. Public Employees Relations Bd.,* 1995 OK 99, 904 P.2d 604, 607 n. 4; *City of Tulsa v. Public Employees Relations Bd.,* 1990 OK 114, 845 P.2d 872, 875.

**6.** 10. *Demotion to a designated Rank of Grade for Cause*—Upon approval of the City Manager, the

Chief of Police may demote an employee to a lower rank or grade. Such demotion will not be made if any permanent employee in a lower rank will be laid off as a result of the demotion.

**7.** 11. *Termination of Employment*—Upon approval of the City Manager, the Chief of Police may

¶ 16 In this case, the eligibility list was completed on or about July 30, 1998, and had expired before the Arbitrator's ruling was issued on February 23, 2000. At that time, the list could not be held "invalid"; it no longer existed. Further, under the terms of the CBA itself, which incorporates Oklahoma's FPAA, an employer's discretion to demote employees is restricted to demotions for cause. Under *Hennigh,* the CBA and the General Policy Orders noted, we hold Appellants did possess a protected property interest in their employment and rank.

¶ 17 As to the second step of the inquiry, we consider whether Appellants received an appropriate level of due process prior to the deprivation of the protected interest. In *Hennigh,* the Court determined that although the plaintiff did have a protected property interest in his employment and his rank, he nevertheless had received appropriate due process. The *Hennigh* plaintiff complained that his procedural due process rights were violated because the discipline imposed did not comply with the CBA's requirement for notarized complaints. The Court of Appeals stated:

> However, the Constitution does not require that each individual receive the procedural guarantees provided for by the instrument which bestows a property interest ... The Due Process Clause of the United States Constitution entitles each citizen to notice and an opportunity to be heard prior to the deprivation of a fundamental right ... This court stated that '[a] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure

which itself falls short of standards derived from the Due Process Clause.' [Citations omitted.]

*Hennigh,* 155 F.3d at 1256.

¶ 18 In *Hennigh,* prior to his demotion, the plaintiff had been given an informal hearing before the Review Board. The City Manager also allowed plaintiff and his counsel an opportunity to respond to the allegations before imposing discipline. The federal Court of Appeals held this level of process met "the constitutional standard for a pre-termination hearing." *Id.* at 1256. Additionally, the Court stated the rule that a plaintiff "is not entitled to an *extensive* or *formal pre-termination hearing* if there are adequate post-termination procedures." *Id.,* citing *Benavidez v. Albuquerque,* 101 F.3d 620, 627 (10th Cir.1996) [Emphasis supplied].[8] The Court noted other circuit courts generally hold that grievance procedures in a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process. The Court held that the CBA's grievance procedures provided Hennigh with an adequate post-deprivation remedy.

¶ 19 In *Hennigh,* the plaintiff was given the opportunity, however informal it was, to answer the complaints against him *before his demotion.* That opportunity was bolstered by Hennigh's post-demotion grievance proceeding, under the CBA procedures, which were deemed adequate by the Court. Appellants in the present case received neither "extensive" nor "formal" pre-demotion due process; they received *no* pre-demotion due process. In fact, their fate was decided by others following a hearing they could not attend. In this case, Appellants also received no benefit from adequate post-demo-

---

terminate any permanent or temporary employee for cause.

8. City employees subjected to drug testing were terminated after a pre-termination hearing. Because the pre-termination procedures were extensive, the post-termination procedure was less important to satisfy due process. The Tenth Circuit Court held:

> [S]imilarly, we must evaluate the constitutionality of post-termination process in light of the pre-termination procedures it follows.
> When the pre-termination process offers little or no opportunity for the employee to pres-

ent his side of the case, the procedures in the post-termination hearing become much more important ... and where the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing ... In contrast, when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great.

*Benavidez v. City of Albuquerque,* 101 F.3d at 627.

tion proceedings because their grievance was denied. Clearly, Appellants herein were not afforded an appropriate level of due process to protect their property interests.

## V.

### COCHRAN'S LIABILITY

¶ 20 Cochran contends that as a public official, he is immune from liability for Appellants' § 1983 claim under the doctrine of "qualified immunity". In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court adopted an objective test to determine whether the doctrine of qualified immunity applies. When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* at 818, 102 S.Ct. at 2738. The court will examine the law as it was at the time of the defendant's actions to determine whether the law allegedly violated was clearly established. *Id.* The plaintiff has the burden of convincing the court that the law was clearly established. *Pueblo Neighborhood Health Centers, Inc., v. Losavio*, 847 F.2d 642 (10th Cir.1988), citing *Lutz v. Weld County School Dist.*, 784 F.2d 340, 342–43 (10th Cir.1986). The plaintiff must do more than identify a clearly established right in the abstract and allege it was violated. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Once the defense is raised, the court must allow the plaintiff the opportunity to show the defendant's conduct violated the law and that the law was clearly established when the alleged violation occurred. *Pueblo Neighborhood Health Centers, Inc.* at 647. The question is a legal one for the trial court to resolve, and the court's decision should identify the law upon which it relied and state the basis for its conclusion. *Id.*

¶ 21 When defendants move for summary judgment on grounds of qualified immunity, the plaintiff must "come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir.1994), citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, supra at 646. Unless such a showing is made, the defendant prevails. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, at 646. If the plaintiff establishes both of these matters, a defendant bears the normal burden as the movant for summary judgment of "showing that no material issues of fact remain that would defeat his or her claim of qualified immunity." *Id.* An objective standard is applied to determine whether a defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pueblo Neighborhood*, 847 F.2d at 645.

¶ 22 Cochran contends that even if Appellants had had some constitutionally protected property interest for which due process would attach, it was not so "clearly established such that reasonable officials would have understood that their conduct violated that right", citing *Dill v. City of Edmond*, 155 F.3d 1193 (10th Cir.1998). He contends that the clearly established law required him to accept and follow the Arbitrator's ruling, whether or not he agreed with it, citing the Court of Civil Appeals' June 16, 2000, unpublished opinion in *F.O.P. and Neal v. City of Edmond*, in case number 93,932. However, reliance on *Neal* for guidance in this case was misplaced. *Neal* involved the City's refusal to enforce an arbitration award [9] arising out of a grievance filed by the

---

9. The arbitration panel overturned Neal's dis- charge and required his reinstatement.

officer involved, Neal. Here, however, we are concerned with whether Cochran's conduct of demoting Appellants was required to enforce the arbitration award arising from Dill's grievance. He also contends Appellants' promotions became a nullity as a matter of law and that the established law gave Appellants no more than a protected interest in continued employment, not in a particular job or rank.

¶ 23 In response to Cochran's motion, Appellants cited *Hennigh v. City of Shawnee,* supra, and *Dill v. City of Edmond,* supra.[10] These cases established that a property interest in their continued employment was created through the CBA in conjunction with state law, i.e., the FPAA, and that the same analysis is applicable to their rank, citing the CBA's requirement for "cause" to "discharge, demote or discipline" employees. Therefore, they contend, under the cases cited, which were in effect at the time, they were entitled to due process before being demoted.

■■■ ¶ 24 In Cochran's motion on this issue, he contends that *if* Appellants had a property interest in their positions as sergeants, he did not deny them due process. Rather, he contends it was the F.O.P., the CBA's procedures and the Arbitrator which were responsible for denying them any such alleged right. However, the arbitrator's function is to enforce the CBA, not to protect the constitutional rights of the grievant. See *McDonald v. City of West Branch,* 466 U.S. 284, 290–291, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302, which held "because an arbitrator's authority derives solely from the contract, ... an arbitrator may not have the authority to enforce § 1983 ... Indeed, when the rights guaranteed by § 1983 conflict with provisions of the collective bargaining agreement, the arbitrator must enforce the agreement." [Citations omitted]. Moreover, Appellants were not grievants whose case was

before the Arbitrator. Cochran also asserts Appellants can not have a constitutionally protected property interest in a position they are legally considered to have never held.

¶ 25 Appellants sustained their burden of naming the clearly established right, a property interest in their employment *and rank,* through the clearly established federal law at the time, i.e., the Tenth Circuit Court of Appeals' cases, *Hennigh* and *Dill.* While they are not Oklahoma Supreme Court cases, both cases interpret Oklahoma law and were published opinions at the time of the demotions. *Dill* was certainly known to the City of Edmond and Chief of Police Cochran. It dealt with a CBA virtually identical to the one at issue herein. Moreover, the FPAA, with which the City and Cochran were familiar, requires them to follow the terms of the CBA. Cochran responds with the claim that he had no choice except to follow the Arbitrator's ruling. This position raises material factual issues: did Cochran have to demote Appellants in order to comply with the arbitration award, thereby depriving them of their property interest and due process rights, or was there an alternative method of compliance which also complied with the law and the CBA? Did Cochran disregard the clearly established law at the time? In other words, would reasonable minds differ, or are different inferences possible, as to how to implement the ruling? We determine different inferences are possible, and summary judgment was improperly granted on this issue.

¶ 26 If the materials subject to consideration on a motion for summary judgment either disclose controverted material facts, or, reasonable minds might reach different conclusions even if the material facts are undisputed, a motion for summary judgment should be denied. *Perry v. Green,* 1970 OK 70, 468 P.2d 483, 488–489.

---

10. Although the Court of Appeals ultimately held that Dill's property interest in the change of his duty schedule was *de minimis* and did not trigger procedural due process protection, the Court did hold a property interest in his employment was established. See *Dill v. City of Edmond,* 155 F.3d 1193, 1207 (10th Cir.1998), which provides:

In this case, an express contract, the collective bargaining agreement between the City of

Edmond and the fraternal order of police, gave rise to a protected property interest in Plaintiff's continued employment. The agreement provided that management could only discharge, demote or discipline employees "for cause." Thus, Plaintiff had a protected property interest in not being disciplined without cause. [Footnote omitted.]

## VI.

### CITY'S LIABILITY

¶ 27 In its motion for summary judgment, City alleged that no property interest arose from an invalidated examination. City has cited several cases from other jurisdictions [11] which hold that an invalidated procedure is void *ab initio.* Accordingly, it is argued, if the promotional process was void, there was no promotion, no property interest and no entitlement to protection under the law against demotions.

¶ 28 None of the cases cited by the City pertain to Oklahoma law. Only one of the cases, *City of San Antonio v. Gonzales,* 737 S.W.2d 78 (Tex.App.1987), involves a collective bargaining agreement between a city and a police officers' association. Although the facts involve police officers promoted from an eligibility list later declared invalid, the case does not address their demotions or the rights they had acquired under the CBA after their promotions. We find City's citations of authority are inapplicable.

 ¶ 29 City acknowledges this Court has not previously addressed the issue in the context of grievance procedures and the FPAA, although it cited Oklahoma authority for the rule that generally, a void act of any kind confers no right. City also argued that because of Appellants' knowledge of the pending Dill grievance, they had no "legitimate expectation" of their continued employment, as required by *Hennigh.* However, that argument is not persuasive. Appellants correctly note in their response on this issue to Cochran's motion for summary judgment that there is no provision in the CBA which allows an employee to file a grievance in anticipation of a demotion.[12] Until Appel-

lants received the "demotion letters", they had no grievance because they had lost nothing. Appellants' knowledge of a grievance filed by another employee, without more, did not satisfy City's or Cochran's obligation to give Appellants due process before demoting them.

 ¶ 30 A municipality is a "person" for purposes of § 1983 liability. *Monell v. Department of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a municipality's liability cannot be imposed on the basis of *respondeat superior* or vicarious liability. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. A municipality has no immunity for immune ██ s of its officials, *Owen v. City of Independence,* 445 U.S. 622, 647–650, 100 S.Ct. 1398; 1413–15, 63 L.Ed.2d 673 (1980). The immunity enjoyed by the employee is not material as to the liability of the government employer. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). Although a municipality is not liable vicariously for the acts of its employees, it can be subject to direct liability if it caused a constitutional violation through a policy statement, ordinance, regulation or decision officially adopted and promulgated by the municipality's officers. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988). A municipal policy can be established by the single act of a policymaker who has final policymaking authority to bind the municipality to his actions and who has final authority to make decisions from several available alternatives. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The mu-

---

**11.** *O'Grady v. Cook County Sheriff's Merit Board,* 260 Ill.App.3d 529, 198 Ill.Dec. 28, 632 N.E.2d 87 (1994); *Trosky v. Civil Service Commission,* 539 Pa. 356, 652 A.2d 813 (1995); *Ochocki v. Dakota County Sheriffs Department,* 454 N.W.2d 476 (Minn.App.1990); *City of San Antonio v. Gonzales,* 737 S.W.2d 78 (Tex.App.1987); and *Kauffman v. Puerto Rico Telephone Company,* 841 F.2d 1169 (1st Cir.1988).

**12.** Nevertheless, the affidavit of Appellant Fees, attached to Plaintiffs' Reply to Cochran's Response to Plaintiffs' Motion for Partial Summary

Judgment, shows that Appellants attempted to participate. It provides:

> When the grievance proceeding involving Dennis Dill was pending, I personally asked Acey Hopper, President of the Edmond FOP, if I and the other Sergeants who could potentially be affected by the arbitrator's decision (including the other two Plaintiffs herein) could either participate in or at minimum attend the arbitration hearing related to the Dill grievance. I was told that none of the Plaintiffs in this case could attend because we were not interested parties in the Dill grievance.

nicipality can be liable for the harm caused by an official with such authority because the municipal agent's status cloaks him with the municipality's authority. *Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299. It is a question of state law whether an official has final policy-making authority to bind the municipality. *Praprotnik*, 485 U.S. at 123–124, 108 S.Ct. at 924.

¶ 31 Appellants raised the policy-maker issue in their petition. In City's response to Appellants' motion for partial summary judgment, it argued that the reduction in Appellants' rank, which followed as a result of Dill's grievance, occurred by operation of law, not because of the City. Cochran argued it was the F.O.P., CBA procedures and the Arbitrator which denied Appellants their property interests, if any, and that the clearly established law required him to demote Appellants. Appellants argued Cochran and the City failed to follow the CBA and GPO requiring cause for demotions. Cochran argued that the GPO does not **prevent** a promotion from being voided.

¶ 32 Cochran initiated the General Policy Orders in his capacity as Chief of Police. An inference arises that both City and Cochran, in effect, argue the policy of the City required Appellants' reduction in rank. Fact questions arise as to: (1) whether as a policymaker, Cochran ordered the Appellants' demotions because the City's policy required it; and (2) whether **the absence of a specific GPO provision preventing the promotion from being voided** justifies the demotion of officers without a hearing under the City's policy. Because the trial court's orders granting summary judgment were general judgments,[13] without findings of fact or conclusions of law, and because these inferences are possible under the evidence,[14] we do not know exactly what the trial court

considered. We cannot be sure the trial court did not decide fact questions reserved for a jury.

¶ 33 The trial court could have rendered judgment for Cochran because it found Appellants had no property interest in their employment, and therefore Cochran, individually, did not violate their due process rights. Or, the trial court could have found that although property interests existed in Appellants' employment, the law was not clearly established at the time of the demotions, and Cochran was entitled to the defense of qualified immunity. This could also result in judgment for Cochran. However, if Cochran violated Appellants' constitutional rights *in his official capacity,* despite having qualified immunity in his individual capacity, the City could be liable, although Cochran is immune. This cannot be determined from the face of the orders entered, and we must reverse and remand.

## VII.

### *OTHER CLAIMS*

¶ 34 Finally, Appellants contended in their petition in error that the trial court abused its discretion in entering judgment for City on their contract and tort claims. They contend these claims were not included in their motion for summary judgment and there are remaining factual issues on these claims. However, their breach of contract claim was raised in their motion for partial summary judgment, and addressed in their reply to Cochran's response. Also, their negligence claim was addressed by City, in its response to Appellants' motion for partial summary judgment, recast by City as a claim for the "negligent deprivation of property".

¶ 35 However, we agree that both the claims for the intentional and negligent inflic-

---

13. The content of the orders comply with the requirements of 12 O.S.2001 § 696.3(A). They contain: (1) a caption, setting forth the court, the names and designation of the parties, the file number and title of the instrument; (2) a statement of the disposition of the motion ("Defendant's Motion for Summary Judgment is hereby sustained"), including a statement of the relief awarded ("judgment is entered for the Defendant City of Edmond/Defendant Dennis Cochran"); and (3) the signature and title of the court. The

orders were properly file-stamped, and a Certificate of Mailing, signed by the Court Clerk's Deputy, was filed. In all respects, the court's orders comprise a final judgment as to both defendants.

14. Cochran testified in his deposition that Appellants were never promoted, and therefore, were never demoted, despite his use of those terms in his correspondence to them.

tion of emotional distress were not raised in the motions for summary judgment, although they were raised in the petition. On remand, these issues must be resolved by the trier of fact.

¶ 36 Summary judgment is improper if under the evidentiary materials, reasonable men could reach different conclusions from the facts. *Indiana Nat. Bank v. State Dept. Of Human Services*, 1993 OK 101, 857 P.2d 53. Clearly, summary judgment was improperly granted.

## VIII.

### *CONCLUSION*

¶ 37 We hold Appellants exhausted their administrative remedies under the CBA. They have a protected property interest in their employment and rank through the CBA and the FPAA, but they were denied procedural due process prior to their demotions. Material issues of fact for a jury exist as to: (1) whether Cochran violated Appellants' clearly established constitutional rights for purposes of his individual qualified immunity defense to the § 1983 claim; and (2)whether the City incurred liability for the § 1983 claim because of Cochran's conduct in his official capacity. Appellants' remaining claims of the intentional and negligent infliction of emotional distress should also be resolved by the trier of fact upon remand.

¶ 38 The judgment in favor of Cochran and the City of Edmond is reversed. This case is remanded to the trial court for further proceedings.

¶ 39 REVERSED AND REMANDED.

OPALA, V.C.J., and HODGES, LAVENDER, HARGRAVE, and KAUGER, JJ., concur.

WINCHESTER, J., concurs in part, dissents in part.

SUMMERS and BOUDREAU, JJ., dissent.

WINCHESTER, Justice, concurring in part, dissenting in part.

¶ 1 The case at bar involves an action against the City of Edmond and its Chief of Police, Appellee Dennis Cochran, filed by police officers, appellants herein, who are employed by Appellee City of Edmond. Appellants employment is subject to a collective bargaining agreement governed by the Fire and Police Arbitration Act, codified at 11 O.S.2001, § 51–101 *et seq.* Appellants were promoted to the rank of sergeant and subsequently notified in writing by Appellee Cochran that they had been demoted to their previous rank. They filed grievances in accordance with the collective bargaining agreement, arguing they had a property interest in their continued employment as sergeants and had been demoted without cause. The portion of the majority's opinion today with which I take issue involves appellants' claim against Appellee Cochran under 42 U.S.C. § 1983. For the reasons stated herein, I respectfully dissent to section V of the majority's opinion, involving Cochran's liability. I would uphold the trial court's entry of judgment in favor of Cochran on this issue.

¶ 2 Cochran is entitled to qualified immunity under *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. Cochran contends that the clearly established law required him to accept and follow the arbitrator's ruling, whether or not he agreed with it. This ruling provided that appellants were to be demoted. Cochran relied upon *F.O.P. and Neal v. City of Edmond*, case number 93,932, an unpublished opinion of June 16, 2000, by the Court of Civil Appeals, in his belief that clearly established law required him to accept and follow the arbitrator's ruling.

¶ 3 The majority opinion states that Cochran's reliance on *Neal* "was misplaced." This finding is immaterial, given that Cochran's reliance on *Neal* was reasonable. I would adopt the rationale espoused by the United States District Court for the Western District of Oklahoma in *Terrapin Leasing, Ltd. v. United States*, 449 F.Supp. 7, (W.D.Okla.1978). That court, in addressing the issue of qualified immunity as applied to federal officers, which has been held identical

to the immunity doctrine applied in 42 U.S.C. § 1983 actions to immunity of state officials [1], stated: "... the issue is not the officers' attitude generally but whether they believed they were acting in accordance with the law...."

¶ 4 In *Terrapin Leasing*, Internal Revenue Service agents were accused of violating a corporation's rights under the Fourth and Fifth Amendments to the United States Constitution when they levied upon and seized certain automobiles to satisfy an alleged unpaid tax liability of the corporation's president and sole owner. The court held that the doctrine of qualified immunity barred any recovery against the individual IRS agents, holding among other issues, that the seizure was not in bad faith or unreasonable and was accomplished under the instructions of an IRS attorney. Citing a similar factual situation that occurred in the Tenth Circuit case of *G.M. Leasing Corp. v. United States*, 560 F.2d 1011 (10th Cir.1977), the court in *Terrapin Leasing, Ltd.*, held that since the officers believed they were acting in accordance with the law, they were entitled to qualified immunity.

¶ 5 In the instant matter, I would hold that Cochran's reliance upon the *Neal* case for guidance, even if misplaced, constitutes convincing evidence that he reasonably believed he was acting in accordance with the law, thereby entitling him to qualified immunity from liability under § 1983. As the United States Supreme Court stated in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, quoting from *Scheuer v. Rhodes*, 416 U.S. at 247–248, 94 S.Ct. at 1692, 40 L.Ed.2d 90 (1974):

"It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity...."

¶ 6 I would hold that Cochran had reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that he must comply with the arbitrator's decision, and that this belief affords him a basis for qualified immunity. To the extent that today's majority opinion diverges from this conclusion, I must dissent.

SUMMERS, J., Dissenting and joined by BOUDREAU, J.

¶ 1 I respectfully dissent for two reasons. The first, and most important, is that the Court exercises appellate jurisdiction over what appear to be non-appealable orders. I further dissent because Cochran is entitled to qualified immunity.

¶ 2 I would first request the parties to comment on whether the trial court's orders were immediately appealable because of pending claims left unadjudicated in the trial court. If the orders are indeed not immediately appealable, I would recast a portion of Plaintiffs' petition in error as an application for an extraordinary writ on the issue of Cochran's immunity, assume original jurisdiction but deny the writ (upholding a qualified immunity defense),[1] and then decline to review the issues relating to the City of Edmond in advance of a proper appeal.[2]

## I. Appellate Jurisdiction

¶ 3 This Court has an obligation to make a *sua sponte* inquiry into its appellate jurisdic-

---

1. See footnote 3, *Terrapin Leasing, Ltd. v. United States*, 449 F.Supp. 7, 9 (W.D.Okla.1978).

1. The Court has assumed original jurisdiction to review an order adjudicating a party's immunity to suit in a § 1983 proceeding. *See, e.g., Lambert v. Town of Stringtown*, 1992 OK 103, 834 P.2d 955; *McLin v. Trimble*, 1990 OK 74, 795 P.2d 1035; *Phillips v. Wiseman*, 1993 OK 100, 857 P.2d 50; *Powell v. Seay*, 1976 OK 22, 553 P.2d 161.

2. A qualified immunity defense does not apply to a municipality such as the City of Edmond. The Court has said that "in *Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415,

63 L.Ed.2d 673 (1980), we rejected a claim that municipalities should be afforded qualified immunity, much like that afforded individual officials...." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *See also Board of County Commissioners, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 677, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), ("immunity from suit under § 1983 extends to public servants only in their individual capacities"); *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir.2000); (municipal entities and local governing bodies are not entitled to the traditional common law immunities for section 1983 claims).

tion. *Baptist Medical Center of Oklahoma, Inc. v. Aguirre,* 1996 OK 133, n. 14, 930 P.2d 213, 218; *Chickasaw Telephone Co. v. Drabek,* 1996 OK 76, n. 16, 921 P.2d 333, 337. Upon a *sua sponte* inquiry into our appellate jurisdiction we generally afford the parties an opportunity to address the issue. *Conterez v. O'Donnell,* 2002 OK 67, ¶ 6, n. 5, 58 P.3d 759, 760–761. The appellate record before us appears to show an order that is not immediately appealable. I would thus require a response from the parties on this issue.

¶ 4 Several summary judgment motions, responses, and replies were filed in the trial court.[3] The City of Edmond (or Edmond) sought and was granted "summary judgment." Plaintiffs noted that Edmond's motion was for only *partial* summary judgment. Plaintiffs stated that Edmond "has *completely* ignored the other claims against it, choosing not to seek judgment on Plaintiffs' breach of contract, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress claims." *Plaintiffs Combined Motion to Strike and Objection to Defendant City of Edmond's Motion for Summary Judgment,* Dec. 4, 2001, at p. 11 n. 6, (emphasis in original). The reply of Edmond to this motion did not contest Plaintiffs' characterization of the other pending theories not addressed by Edmond. The City of Edmond's response filed October 10, 2001, does argue that it did not breach the contract because there was a lack

of finality in the selection process. At p. 13. But Edmond did not request, then or later, a judgment on the contract theory, and Edmond's motion for summary judgment filed two months later did not discuss Plaintiffs' contract or tort theories.

¶ 5 Plaintiffs clearly stated in the summary judgment stage that they were seeking judgment against Cochran on a theory that he violated their constitutional rights, and not on contract or tort theories based upon state law.[4] The appellate record appears to show that Cochran has been granted judgment in his favor on the only theory pressed against him. Further, Edmond has been granted summary judgment in its favor on a theory that it violated the Due Process Clause, but not on the contract and tort theories urged by Plaintiffs against Edmond.

¶ 6 I first note that the judgment has no certification authorized by 12 O.S.2001 § 994. Secondly, when theories arise from the same transaction or occurrence they are the same claim (or cause of action) for purpose of requiring their adjudication prior to an appeal. See *Liberty Bank and Trust Co. v. Rogalin,* 1996 OK 10, ¶ 9, ¶ 11 n. 3, 912 P.2d 836, 838, 839, where we indicated that affirmative defenses and compulsory counterclaims must be adjudicated when a court adjudicates the related cause of action, and that a trial court lacks the power to certify for appellate review an order that splits a cause of action.[5] This means that when a

3. The motions in chronological order are: (1) September 24, 2001, Plaintiffs' motion for partial summary judgment; (2) October 2, 2001, Cochran's motion for summary judgment (3) October 9, 2001, Cochran's response to Plaintiff's motion for summary judgment; (4) October 10, 2001, City of Edmond's response to Plaintiff's motion for summary judgment; (5) October 17, 2001, Plaintiffs responded to Cochran's motion for summary judgment; (6) November 1, 2001, Plaintiffs filed a reply to the City's response; (7) November 1, 2001, Plaintiffs replied to Cochran's response; (8) November 19, 2001, the City of Edmond's motion for summary judgment; (9) December 4, 2001, Plaintiffs' motion to strike the City's motion for summary judgment and response to motion; and (10) December 10, 2001, City of Edmond responded to Plaintiff's motion to strike and response.

4. See Plaintiffs' Response filed on October 17, 2001, at n.4, pp. 5–6, where they state that the

only claim that they are bringing against Cochran is based upon the Due Process Clause and not tort or contract theories.

5. *Liberty Bank & Trust Co.* relies upon "the same transaction or occurrence" definition of a cause of action or claim for relief. See the definition for "cause of action" in *Retherford v. Halliburton Company,* 1977 OK 178, ¶ 11, 572 P.2d 966, 968–969; *Chandler v. Denton,* 1987 OK 38, ¶ 13, n. 20, 741 P.2d 855, 863–864; *Resolution Trust Corp. v. Greer,* 1995 OK 126, ¶ 11, n. 5, 911 P.2d 257, 260; and *Greenberg v. Wolfberg,* 1994 OK 147, n. 42, 890 P.2d 895.

A cause of action cannot be split or divided into several lawsuits. *Christian v. American Home Assur. Co.,* 1977 OK 141, 577 P.2d 899, 905. A cause of action may not be split into more than one judgment because a judgment is, by definition a final determination of a single cause of action, and in the creation of a judgment the cause of action is merged into the

plaintiff presses theories pursuant to 42 U.S.C. § 1983 *and* breach of contract, and the same transaction or occurrence is used for both the contractual and § 1983 judicial relief, then only one claim or cause of action is brought by that plaintiff.

¶ 7 A "partial summary judgment" or partial summary adjudication is not an appealable order. *Reams v. Tulsa Cable Television, Inc.,* 1979 OK 171, 604 P.2d 373, 376; *Allen v. Lynn Hickey Dodge, Inc.,* 2001 OK 93, 39 P.3d 781, 789, (Opala, J., concurring). In the case before us, this principle means that a cause of action must thus be completely adjudicated on both the contract and § 1983 theories as a prerequisite to an appeal from a judgment[6] on that cause of action or claim for relief.

¶ 8 The United States Supreme Court has stated that claim preclusion may, pursuant to State law, be used to bar a § 1983[7] action when the claim in the § 1983 action arises from the same transaction or occurrence that was previously used as a basis for an action in contract. *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Similarly, the United States Court of Appeals for the Tenth Circuit has explained that res judicata will bar a § 1983 action filed in a federal court when it follows an action filed in an Oklahoma state District Court involving the same transaction or occurrence, i.e., a previous adjudication on the same claim will bar a subsequent § 1983 action. *Jarrett v. Gramling,* 841 F.2d 354 (10th Cir.1988). *Jarrett* involved a police officer terminated from employment who filed a mandamus proceeding for the purpose of obtaining a hearing, and then later filed a § 1983 lawsuit alleging, in part, that he did not receive a hearing. *Id.* 841 F.2d at 355.

¶ 9 I would call for a response from the parties on the appealability question before issuing an opinion in the case.

## II. Qualified Immunity

¶ 10 Qualified immunity is an immunity from suit by government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The Court stated that using an objective reasonableness test "avoids the unfairness of imposing liability on a defendant who 'could not reasonably be expected to anticipate subsequent legal developments, nor ... fairly be said to know that the law forbade conduct not previously identified as unlawful.'" *Crawford–El v. Britton,* 523 U.S. at 590, 118 S.Ct. 1584, *quoting, Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, the inquiry shifts to whether the law identified a particular official's conduct as unlawful at the time the conduct occurred.

¶ 11 In applying qualified immunity a court must define the particular right at issue to determine if it was "clearly established," and if so, then qualified immunity does not apply. At one end of the spectrum a right may be defined so broadly that the immunity would seldom apply, and at the other end a right could be defined so narrowly that qualified immunity would apply in almost every case. The High Court explained:

judgment—the cause of action ceases to exist. *See* note 7 *infra. See also Liberty Bank and Trust Co. v. Rogalin,* 1996 OK 10, n. 2, 912 P.2d 836, 838–839, (a transaction or occurrence cannot be split into two claims).

**6.** A judgment is a final determination of the rights of the parties with respect to a particular cause of action or claim for relief. 12 O.S.2001 § 681. *See City of Lawton v. International Union of Police Associations, Local 24,* 2002 OK 1, ¶ 5, 41 P.3d 371, 374. *See also Federal Deposit Ins. Corp. v. Tidwell,* 1991 OK 119, 820 P.2d 1338, 1341, (there is only one "judgment" or one final judicial determination upon a single cause of action). Upon entry of a judgment the cause of

action is merged into the judgment and the cause of action ceases to exist. *Johnson v. State ex rel. Department of Public Safety,* 2000 OK 7, ¶ 9, 2 P.3d 334; *Black v. Russell,* 1927 OK 485, ¶ 12, 266 P. 448.

**7.** Section 1983 is not a "cause of action" but a statutory remedy for judicial relief based upon the particular transaction or occurrence at issue. The High Court has explained that section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

[T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. ... It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: **The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,** see *Mitchell, supra,* 472 U.S. at 535, n. 12, 105 S.Ct. at 2820, n. 12; **but it is to say that in the light of pre-existing law the unlawfulness must be apparent.**

*Anderson v. Creighton,* 483 U.S. 635, 639–640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), emphasis added and material omitted). *See also Dill v. City of Edmond,* 155 F.3d 1193 (10th Cir.1998).

The Tenth Circuit has stated that a plaintiff need not show a pre-existing case that is factually identical.

> Qualified immunity does not protect official conduct simply because the Supreme Court has never held the exact conduct at issue unlawful. Rather, the shield of qualified immunity is pierced if in light of pre-existing law, the unlawfulness of the conduct is apparent to the officer. Id. "This ordinarily means that there must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other courts must have

found the law to be as the plaintiff maintains."

*Lawmaster v. Ward,* 125 F.3d 1341, 1350 (10th Cir.1997), *quoting, Garramone v. Romo,* 94 F.3d 1446, 1451 (10th Cir.1996).

But there must be some authority "on point" showing that the officials' conduct violate a clearly established right. *Id.*

¶ 12 The opinion of the Court concludes that Plaintiffs met their burden of showing a clearly established right in that they possessed a property interest in their rank. The opinion fails to address the pivotal issue underlying both Plaintiffs' claim and Cochran's defense of immunity—the authority of the arbitrator and Edmond's duty to follow the arbitrator's ruling. Simply, the Court focuses on a "right" without considering the corresponding "duty" of Cochran.[8]

¶ 13 The opinion of the Court states that the arbitrator ruled that the promotional process was invalid, but the ruling did not mention Plaintiffs and "did not include a finding or recommendation that **Appellants' promotions** were invalid." Slip Opn. at ¶ 4, (emphasis in original). That is true. But instead of focusing on what the arbitrator did not say, let us look at what the arbitrator did actually say and what those words mean:

> I further find that as a result of the significant contractual violations committed during the promotional exam on July 29, 1998 renders it void, as well as the promotional list resulting from the application of that test, and hereby order that another examination and assessment center be conducted that is in full compliance with GPO 83–2 (revised).

Motion for Summary Judgment, Sept. 24, 2001, Plaintiffs Exhibit D, at pg. 18.

The arbitrator did say that the **"promotional exam"** is **"void,"** and say that the **"promotional list"** generated from that **"void"** exam is also **"void"**. The promotional process, including the exam, was created by the collective bargaining agreement—a contractual obligation.

¶ 14 The word "void" is a legal term of art that was used by an arbitrator in a ruling on

---

**8.** A "right" possessed by one entity exists in conjunction with a corresponding "duty" by a different entity. *See Silver v. Slusher,* 1988 OK

53, n. 28, 770 P.2d 878, 884, *quoting,* W. Hohfeld, *Fundamental Legal Conceptions,* 78, (1923).

interpreting a contract. *Harkrider v. Posey*, 2000 OK 94, ¶ 11, 24 P.3d 821, 827. The arbitrator did not hold that the promotion process was merely "invalid." He stated that the promotion process was a nullity. What impact does this have on the Plaintiffs? The contract provides for a promotional process that includes an examination and provides that a certain number of officers will be promoted based upon their ranking within the process. The officers are competing with each other for a limited number of promotional placements. If a particular placement process and associated examination is a contractual nullity—so too, *arguably*, are any promotions springing from that void process. Cochran's actions were *arguably* correct, and by use of that word, I mean his actions were reasonable in light of then existing precedent. The reasonableness of Cochran's actions in light of precedent shows that he is entitled to immunity.

¶ 15 One court has explained that "there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992). The Court continued: "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (*citing Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

¶ 16 In this case, there were competing, conflicting, and unclear legal forces operating upon the chief when he made his decision to return Plaintiffs to their former rank. On one hand, section 7.1(F) of the collective bargaining agreement provided that a permanent employee may be demoted only for cause, subject to the "disciplinary grievance procedures . . . if such action falls within the definition of grievance." On the other hand, until today, the law was unclear as to whether the arbitrator's ruling constituted cause for returning Plaintiffs to their former rank. Further, Cochran's decision concerning Plaintiffs had nothing to do with "discipline." And finally, Cochran's reluctance not to follow the arbitrator's ruling was objectively reasonable since, in a very recent case, he

had chosen not to follow the ruling of an arbitrator, only to be told by the trial court (subsequently affirmed by the Court of Civil Appeals) that he had to follow the arbitrator's ruling whether it was right or not. *Neal v. City of Edmond*, No. 83,932, (Okla. Civ.App. June 16, 2000), *cert. denied*, October 17, 2000.

¶ 17 Generally, courts refuse to review the merits of an arbitration award under collective bargaining agreements. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). If an arbitrator is arguably construing or applying the contract and acting within the scope of his authority, and not acting through fraud or dishonesty the arbitrator's decision is enforced by courts. *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). This Court has said that "Only when the 'arbitrator's words manifest an infidelity to this obligation' will courts refuse to enforce the award." *City of Yukon v. International Ass'n of Firefighters, Local 2055*, 1990 OK 48, 792 P.2d 1176, 1180, *quoting, United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. 1358. We further said that "this Court may only consider whether the arbitrator's decision 'draws its essence from the collective bargaining agreement.'" *City of Yukon v. International Ass'n of Firefighters, Local 2055*, 792 P.2d at 1179, *quoting, United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. 1358.

¶ 18 This Court has adopted the concept from federal law that an arbitrator's ruling should be followed whether right or not. *City of Yukon, supra.* The Court now, for the first time, puts officials on notice that they may not in good faith rely upon an arbitrator's ruling, even though the parties have previously made that ruling contractually binding. .

¶ 19 The Court's opinion states that a void promotional process has no impact on Plaintiffs because their names were not in the arbitrator's order. This conclusion rests upon some assumptions that cannot be made. First, did the arbitrator have the power to issue a decision binding on Edmond stating that the promotional process and exam were

void? The collective bargaining agreement states that a grievance may include an interpretation as well as an application of rights created by the contract. The contract states that the arbitrator may make "recommendations" as part of the arbitrator's decision. And it states that the arbitrator's ruling is binding.

¶ 20 Secondly, assuming that the decision of the arbitrator to void the promotional process was in excess of the arbitrator's power—is the decision of the arbitrator itself void or voidable? The Court's opinion necessarily implies the former when it denies Cochran his immunity. This too, I believe is error.

¶ 21 The City of Edmond and the F.O.P. considered the arbitrator's order to be based upon the essence of the collective bargaining agreement. In my view, an arbitrator's power under a collective bargaining agreement to review the validity of a promotional exam includes the power to declare the exam void as to all applicants of that exam when the contracting parties to the collective bargaining agreement have a contractual intent to create such power. The F.O.P. and the City of Edmond thought that the arbitrator in this case had such power, and this Court should not lightly cast aside what the parties intended. The Court does so by stating that the Plaintiffs' possessed a right that was clearly established—a right held by Plaintiffs that required the City of Edmond to ignore an order of an arbitrator that was made binding on Edmond according to a collective bargaining agreement.

¶ 22 Generally, as a matter of Oklahoma jurisprudence, when parties to a compulsory obligation act in conformity therewith this Court does not penalize them for their failure to anticipate a legal decision holding the compulsory obligation to be void. One example of this occurs in the context of the conduct of public officials following compulsory statutes later adjudicated to be void, and this Court's recognition that people rely upon the validity of statutes until they determined to be unconstitutional (void). *See, e.g., Ethics Commission of State of Okla. v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1079; *General Motors v. Oklahoma County Board of Equalization,* 1983 OK 59, 678 P.2d 233, 238–241, *cert. denied,* 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984).[9] A similar concept occurs in contract jurisprudence where this Court recognizes that the conduct on one party may create an estoppel so that the other party need not comply with a written provision in a contract. *See, e.g., Knittel v. Security State Bank, Mooreland,* 1979 OK 47, 593 P.2d 92, 95–96. The common legal principle is that parties acting in good faith while attempting to fulfill compulsory obligations are not penalized for their good-faith conduct.

¶ 23 What this concept has to do with our controversy today is simply this—the Court penalizes the "good faith" of Cochran's act in attempting to follow the compulsory obligation of the arbitrator's ruling, and strikes a blow at the purpose of qualified immunity. Qualified immunity has been known as a "good faith" immunity. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). One reason for this is that the immunity was designed to shield officials when they could not reasonably anticipate that their conduct would give rise to liability. 468 U.S. at 195, 104 S.Ct. 3012. The official's good faith is measured by an objective standard. *See* C. Richey, *Manual on Employment Discrimination and Civil Rights Actions in the Federal Courts,* E–12–14 (rev. ed.1988), (Judge Richey explains *Harlow v. Fitzgerald, supra,* and *Anderson v. Creighton, supra* ). As previously pointed out, the immunity "avoids the unfairness of imposing liability on a defendant who 'could not reasonably be expected to anticipate subsequent legal developments, nor . . . fairly be said to know that the law forbade conduct not previously identified as unlawful.' " *Crawford–El v. Britton, supra.*

¶ 24 The City of Edmond states that it was required to vacate the promotions by an order made by arbitration that it considered to be binding. The F.O.P. evidently considered

---

9. The act of reliance by a person upon the conduct of others as justification for that person's conduct of his or her affairs is a doctrine of equity jurisprudence. *See, e.g., Waters v. Stevens,* 1947 OK 4, 176 P.2d 808, 811–812; *Luschen v. Stanton,* 1943 OK 177, 137 P.2d 567, 569. *Accord, Russell v. Board of County Commissioners, Carter County,* 1997 OK 80, 952 P.2d 492, 503, (elements of promissory estoppel discussed).

the arbitrator's order to be binding on the City of Edmond and the F.O.P. Could Cochran have reasonably known that following the arbitrator's order would give rise to liability?

¶ 25 The Court's opinion does not cite to a single binding precedent pre-dating Cochran's act that would inform him that he must disregard the arbitrator's decision considered as binding by the City of Edmond. The facts are sufficiently developed to show that Cocharn is entitled to the immunity. Under the facts of this case, I do not believe that Cochran transgressed a bright line. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner, supra.* I believe that Cochran is thus entitled to qualified immunity.

¶ 26 In sum, I would have the parties brief the issue of the Court's appellate jurisdiction. In the event that the Court has no appellate jurisdiction I would recast the petition in error as an application for a writ, then assume original jurisdiction and deny the writ, thus recognizing Cochran's qualified immunity. I would decline to address whether the interlocutory "judgment" in favor of the City of Edmond was correct.